JAMES FARLEY, as Administrator of JAMES FARLEY, Jr., v. JOHN MCCONNELL et al.

(GENERAL TERM, THIRD DEPARTMENT, MAY, 1872.)

It will be assumed, in favor of an administrator's bond, which requires obedience to all orders "of the county judge," that no provision has been made (Const., art. 6, § 15) for a separate surrogate in the county.

The court will take judicial notice of the population of counties and the public officers therein.

The administrator's bond is not defective, because the "county judge" is named in it, in counties where the judge is also surrogate.

Or, if defective, the intent being manifest, the court will relieve against it. It is sufficient if the bond conform substantially to the statute.

In the absence of proof it will be assumed that the surrogate made the proper examination as to the manner of the intestate's death; and this is so, although the petition does not affirmatively show that fact.

The statute which requires the surrogate to examine the applicant for the letters, as to the time, &c., of death, is merely directory. (Per MILLER, P. J.)

Farley *v.* McConnell.

Letters of administration being in due form and regular upon their face, confer authority upon the administrator and are not questionable in a collateral action.

THE action was for negligence, and tried at the Chemung County Circuit in October, 1871.

The defendants were contractors for the construction of a sewer through Conongue street, in the city of Elmira, in one of the catch-basins of which the plaintiff's son, a little boy about six years old, fell and was drowned. Objections were made and exceptions taken to the admission of the petition, bond, &c., on the appointment of the plaintiff as administrator, as stated in the opinion. The jury rendered a verdict in favor of the plaintiff, for $500 damages.

The exceptions of the defendants were ordered to be heard in the first instance at General Term.

*Smith and Hill*, for the plaintiff.

*James L. Angle*, for the defendants.

Present—MILLER, P. J., POTTER and PARKER, JJ.

MILLER, P. J. The defendant's counsel presents two objections to the validity of the plaintiff's appointment as administrator:

First. That the bond was defective, inasmuch as it is conditioned that the plaintiff, as administrator, shall obey "all orders of the county judge of Chemung county" instead of the "surrogate" of that county.

Second. That the petition for letters of administration does not affirmatively show that the petitioner was examined touching the manner of the death of the intestate.

As to the first objection, the fifteenth section of the sixth article of the Constitution of the State provides that "the county judge shall also be surrogate of the county; but, in counties having a population exceeding 40,000, the legislature may provide for the election of a separate officer to be surrogate," &c. The county judge is primarily *ex officio* sur-

rogate, and, I think, until the contrary be made to appear, it must be assumed that he was surrogate, as the Constitution provides, and that the county of Chemung was not within the exception. But as the court have the right, I think, to take judicial notice of the population of counties and of their public officers, it follows that the county judge was in fact such surrogate who issued the letters, and whose orders the administrator was bound to obey. Such being the case, the bond was not defective, and in effect was the same as if the surrogate had been named in a county where that office was filled by another officer and was distinct and separate from the office of county judge.

Even if there was a mistake in the insertion of the wrong officer, as the intention is manifest the court will relieve against it. (*Wiser* v. *Blachly*, 1 John. Ch., 607.) A strict and technical conformity to the statute is not essential to the validity of the bond, and it is sufficient if it conform *substantially* thereto, and does not vary in any matter to the prejudice of the rights of the party to whom or for whose benefit it is given. (2 R. S., 556, § 33; *Supervisors of Schoharie* v. *Pindar*, 3 Lans., 8, 11.)

As to the second objection, it is, I think, without any foundation. The statute provides that, before any letters of administration shall be granted, " the fact of such person's dying intestate shall be proved to the satisfaction of the surrogate, who shall examine the person applying for such letters on oath, touching the time, place and *manner of the death*," &c. It will be noticed that the statute does not require that the petition should show the " manner of the death;" and for anything that appears such examination may have been had by the surrogate, and in the absence of any proof to the contrary, as every intendment is in favor of a judgment, the legal presumption is that the surrogate performed his duty. I am also inclined to think that the statute in this respect is merely directory, and a failure to conform to its provisions is not a fatal objection to the validity of the letters issued.

Independent of the considerations presented, I am also of the opinion that neither one of the objections is of any avail, because the letters of administration being in due form and regular upon their face, they were sufficient to confer authority to the plaintiff and cannot be questioned in a collateral action. ( *Vanderpoel* v. *Van Valkenburg*, 2 Seld., 190; 7 Paige, 397; 3 B. Ch., 281.) As the letters have been issued by an officer who had jurisdiction, they must be considered as valid until set aside by a competent tribunal, and are not open to an impeachment in a collateral proceeding. They were *prima facie* sufficient, and cannot be disregarded without a judgment of a competent court declaring that they are invalid.

No error is manifest, and judgment must be ordered on the verdict for the plaintiff, with costs.

Judgment accordingly.