### DETERMINED IN THE

# FIRST DEPARTMENT

### AT

# GENERAL TERM.

## February, 1892.

---

THE PEOPLE OF THE STATE OF NEW YORK ex rel. ALEXANDER MEAKIM and Others, Commissioners of Excise of the City of New York, Respondents, v. MAX ECKMAN and Others, Appellants.

*Excise law in New York city — bond for a saloon license — who may sue for its breach — a sale of liquor to a minor is a "disorderly" act — Laws of 1857, chap. 628, secs. 7, 15, 24.*

The commissioners of excise of the city of New York are the proper persons to bring an action for a breach of a covenant in a bond, given to the people upon the issuing of a license to sell strong and spirituous liquors at a saloon in that city.

Where such commissioners, as a condition of issuing such a license, require a bond to be given, and the condition is accepted and the bond is given, the obligors are estopped from questioning its validity. (Van Brunt, P. J., dissenting.)

*Semble*, that such a bond is authorized and valid. (Per O'Brien, J.)

One of the conditions of such a bond was that the licensee should not suffer his place of business to be disorderly. He sold liquor to a minor under fourteen years of age, which is a violation of section 15 of the General Excise Law (*supra*).

*Held*, that this was a breach of the condition.

That the word "disorderly" will, in this connection, not be given its meaning as defined in section 322 of the Penal Code, but the ordinary meaning which it has at common law and in dictionaries.

APPEAL by the defendants, Max Eckman, Adolph Prince and Isaac Schleifstein, from an interlocutory judgment of the Supreme Court, entered in the office of the clerk of the city and county of

New York on the 22d day of June, 1891, overruling a demurrer to the complaint, with leave to answer over on payment of costs, and granting final judgment for a failure to do so.

*Moses Weinman,* for the appellants.

*Edward Browne,* for the respondents.

O'Brien, J. :

The complaint in this action is based upon an alleged breach of the condition of a bond, given by the defendants to the People of the State of New York, upon the issuance to the defendant Eckman of a license to sell strong and spirituous liquors upon premises. The bond is in the sum of $250, and the condition reads: "That, if during the time for which the said license shall be granted, he shall not suffer his place of business to be disorderly, nor suffer any gambling or keep a gambling table of any description within said premises so kept by him, or in any out-house, yard or garden belonging thereto, nor suffer said premises to be used for immoral or unlawful purposes, and that, if during the time for which the undersigned shall be licensed, he shall keep and observe the provisions of the acts hereinabove mentioned and the acts of the legislature (known as chapter 628 of the Laws of 1857), supplementary thereto and amendatory thereof, then this obligation to be void, otherwise to remain in full force and virtue."

A violation of the condition of the bond is charged against Eckman in this, that on a day specified he sold and permitted his agent and servant to sell strong and spirituous liquors to a minor under the age of fourteen years. The demurrer admits the facts, and, therefore, the three questions of law arising upon this appeal open for discussion are:

*First.* As to the plaintiff's right to maintain this action.

*Second.* As to the commissioners' power to demand the bond as a condition of granting the license to Eckman.

*Third.* Was there a violation of the condition of said bond by the sale of intoxicating liquor to a minor under the age of fourteen years?

In disposing of these questions relied upon by the appellants, it should be remembered, as stated by the learned judge below, that, "The instrument was exacted, but voluntarily executed and

delivered to obtain the desired license." The learned judge was also of the opinion that the obligors should not be permitted to question the validity of an obligation thus assumed. Apart, therefore, from any statutory provision requiring a bond to be given, the conclusion reached by the learned judge below, it seems to us, can be sustained. It is discretionary with the commissioners as to the persons to whom, and the conditions upon which, the license shall be issued. Where, therefore, in the exercise of a discretion conferred by law, a bond is required as a condition precedent to the issuance of a license, it can be enforced if its conditions are violated. This results from the fact that it is a good common-law bond.

We have not overlooked, in this connection, the fact that a failure to wisely exercise their discretion, can be remedied by an application to the court for a *mandamus*, and upon such an application the court, undoubtedly, would have the right to determine whether the conditions imposed by the commissioners were reasonable and just. In this case the commissioners required a bond, and no objection was made to giving one, nor was any resort had to the court by *mandamus* for the purpose of determining their right to exact the same. Under such circumstances the bond, being executed, became, as stated, a good bond at common law, and can be enforced. In addition, however, we are of opinion that statutory authority can be found for a determination of the questions presented upon this appeal favorable to the commissioners.

*First.* As to plaintiff's right to maintain the action, it must be conceded, at the outset, that unless some authority is found in the statutes, that the obligee of the bond being the people of the State, an action on their behalf could only be maintained by the attorney-general or district attorney. This view is enforced by reference to section 1962 of the Code, which requires such actions to be brought by the officers named, where provision is not otherwise specially made. The act of 1857, chapter 628, provides by sections 22 and 24, by whom and in whose name actions shall be maintained. This question has been discussed in the two cases of the *People* v. *Groat* (22 Hun, 165) and in *Board of Commissioners of Excise* v. *Burtis* (103 N. Y., 140). The latter case decided that, for penalties imposed by the act, the commissioners of excise were the proper parties to maintain the action. Besides actions to recover penalties imposed by the act

for violations of the excise law, a cause of action exists in favor of some one for a breach of the condition of a bond. This has been specially provided for by section 24 of the Laws of 1857, as construed in the case of *People* v. *Groat* (*supra*), wherein it was held that an action to recover the penalty, incurred by the breach of the condition of such a bond, must be prosecuted by the officers named in section 24, which specially names the commissioners of excise as the persons to prosecute in the name of the people.

In view, therefore, of the express authority given by the statute, as construed in the cases cited, it seems reasonably free from doubt that the commissioners of excise, as they have done here, could, in the name of the people, bring and maintain this action. However, we do not think that the appellants are in a position to urge such an objection upon this appeal, for the reason that it does appear upon the face of the complaint that the plaintiffs have not legal capacity to sue, and, therefore, under sections 488 and 489 of the Code, the objection should be taken by answer, and not by demurrer.

*Second.* Had the commissioners the legal power to demand the bond as a condition of granting the license to Eckman ?

There are two classes of bonds authorized to be taken and required to be given before a license can be granted to an applicant; one from applicants who desire to sell liquors, to be drunk on the premises, commonly known as hotel and saloon licenses; the other to applicants who sell liquors not to be drunk on the premises.

The license granted in this case is known as a "saloon license," and with that alone we have to deal upon this appeal. Many changes, by amendments and new enactments, have taken place in the excise laws since the adoption of the general scheme in 1857. (Laws of 1870, chap. 175 ; Laws of 1873, chaps. 549 and 820 ; Laws of 1883, chap. 340, and chap. 496 of the Laws of 1886.) None of these laws, in express terms, repeals the general scheme or act of 1857 (chap. 628), and, except so far as the subsequent acts may be inconsistent with or repugnant to certain sections thereof, which to that extent would be abrogated, what remains of the act of 1857 would still be of binding force and effect.

By section 4 of the act of 1857 the board of excise was given the power to fix the conditions before granting licenses. By section 6 it was provided that the licenses should not be granted to any persons

to sell liquors to be drank on the premises, unless a person proposed to keep an inn, tavern or hotel. Section 7 (Laws of 1857), makes provision for the bond as follows: "Nor shall such license to keep an inn, tavern or hotel be granted, until the applicant shall have executed and delivered to the board of commissioners of excise herein provided, a bond * * * with a condition, that such applicant during the time that he shall keep any inn, tavern or hotel, will not suffer it to be disorderly, or suffer any gambling or keep a gambling table of any description, within the inn, tavern or hotel, so kept by him, or in any outhouse, yard or garden, belonging thereto."

Section 15 provides that any person who shall sell liquors to a minor shall be deemed guilty of a misdemeanor, and upon conviction shall be liable to a fine of twenty-five dollars for each and every offense, and provides by whom such penalty can be recovered.

It will thus be seen that the act of 1857 made no provision for a saloon license, the board of commissioners being restricted to the granting of licenses to persons keeping an inn, tavern or hotel. It is contended further, that, because a specific penalty is prescribed for the violation of the law of selling liquors to a minor, that a recovery cannot be had on the bond. Our answer is that the legislature, having the power to regulate the sale of intoxicating liquors, could impose dual penalties for the same offense. When the statute fixes both the offense and the penalty and declares it a misdemeanor for doing any act, such as selling liquor without a license, they are entirely independent of each other, and the conviction for the misdemeanor is no bar to an action for the penalty. (*People* v. *Stevens*, 13 Wend., 341; *Blatchley* v. *Moser*, 15 id., 215.) An examination of the laws referred to will show that no act of the legislature since the passage of the act of 1857 contains anything repugnant to or inconsistent with sections 4 and 7, so that the situation to-day is, that, so far as the board of excise is concerned, no doubt exists as to their power, and as to their duty to exact a bond from all persons who apply for a hotel, inn or tavern license. If, therefore, the contention of the appellant is correct, that the commissioners had no power to exact a bond at all from him for a saloon license, then the anomaly is presented that, while in all the other cases specified a bond must be given, a saloon keeper has the right to obtain a license without being required to give any

bond. In 1870, by chapter 175, power was given to the commissioners to license any place to sell strong and spirituous liquors. This is the first authority for granting saloon licenses at all. It is true that, as amended by the Laws of 1873 (chap. 820), no mention whatever is made of the giving of a bond by a saloon keeper, and this is equally true with regard to chapter 340 of the Laws of 1883. But chapter 496 of the Laws of 1886, being an amendment to chapter 340 of the Laws of 1883, provides that the board of commissioners of excise, "if all other requirements of the law have been complied with, have power to grant license to sell strong or spirituous liquors, * * * to be drank on the premises." Although, therefore, it may be true, as claimed by the appellants, that no mention of the bond as a condition of granting a license is by express terms made a provision of any of the acts subsequent to 1857, yet it seems, from a fair construction of all the various provisions of the excise law, that it was not the intent of the legislature to relieve the saloon keepers from giving a bond, while it imposes the condition upon others in the same business. In other words, we are of opinion that the general policy of the legislature in extending the power to grant licenses to sell intoxicating liquors to others than hotel and tavern keepers, was to formulate a general plan or policy equally applicable to all classes of licenses. This conclusion is justified not only by a reference to the general scheme enacted by the act of 1857, but is fortified by the provision of the Laws of 1886, already referred to, which enables the commissioners, upon a compliance by the appellant with the other requirements of the law, to grant the license. One of the requirements of the law applicable to all persons entitled to a license was, by the act of 1857, the giving of a bond, and there is nothing in any act subsequent to 1857 indicating that saloon keepers should enjoy greater advantages in the right to sell liquors than other licensees. The legislature undoubtedly intended to treat all applicants for licenses alike, and that the requirement of a bond as a condition in all cases was and is intended.

*Third.* Was there a violation of the condition of said bond by the sale of intoxicating liquor to a minor under the age of fourteen years?

The appellant contends that the licensee by selling liquor to a minor did not commit a breach of the condition of the bond, and

that the sale of liquor to a minor is not such a violation as would entitle the commissioners of excise to recover upon the bond. This contention is sought to be upheld by a rigid construction of the act of 1857, as to the purposes for which a bond can be exacted. It is insisted that the sale of liquor to a minor is not a violation of any of the conditions expressly fixed by section 7, and that section 15, by affixing a penalty and prescribing the manner in which the person guilty of selling liquor to a minor shall be punished, has thus indicated in what manner, and in what manner only, shall an offense of that character be visited. There can be no doubt that selling to minors is a violation of the law, and it is equally clear that the appellant violated the express condition of the bond by failing to " keep and observe the provisions of the act of the legislature known as chapter 628 of the Laws of 1857, and supplementary thereto and amendatory thereof."

It is insisted, however, that the commissioners exceeded their power in inserting in the bond the language last quoted, and it is claimed that even though a bond could be exacted its terms should be restricted to imposing conditions which are expressly prescribed by the act itself.

The conditions of the bond are not unreasonable, and they are directed to cover the evil which it was the evident intention of the legislature to prevent. We think it doubtful, moreover, if the appellants had the right to challenge the express conditions of the bond, for the reason that the license was issued and they accepted the privilege, and in consideration thereof executed the bond which has been sued upon; "whenever a bond is or shall be required by law to be given by any person, in order to entitle him to any right or privilege conferred by law, or to commence any proceeding, it shall not be necessary for such bond to conform in all respects to the form thereof prescribed by any statute, but the same shall be deemed sufficient if it conform thereto substantially, and do not vary in any matter, to the prejudice of the rights of the party, to whom and for whose benefit such bond shall have been given." (2 R. S., 556, § 33; *Supervisors, etc.* v. *Pindar,* 3 Lans., 11; *Farley* v. *McConnell,* 7 id., 430; *Foster et al.* v. *Foster,* 7 Paige, 49; *Ring* v. *Gibbs,* 26 Wend., 510; *Village of Warren* v. *Phillips,* 30 Barb., 651.)

We do not think, however, that it is necessary to strain the construction of the statute in the present case, to uphold the power of the commissioners in maintaining their action upon the bond for a violation of any of the provisions of the excise law, not expressly enumerated in section 7 of the act of 1857, for the reason that the breach assigned in the present case seems to be covered by the conditions mentioned in section 7. One of the conditions so expressed is that the obligor will not suffer his place of business to become disorderly. In determining the construction or meaning to be given to the word " disorderly," it will not do to resort to the Penal Code as claimed by appellants, and take the definition therein given as to what would constitute a disorderly-house.

As defined by Webster, it means " not regulated by the restraints of morality; not complying with the restraints of order and law." This definition, coupled with the one given by Bishop on Criminal Law, in defining what is meant by disorderly-inns, etc. (§§ 1111, 1119), goes far to support the contention that the sale of intoxicating liquor to a minor under fourteen years of age is a disorderly act, and a breach of the condition of the bond. Moreover, as all the questions raised upon this appeal have been examined in the cases of *The People, etc.*, v. *Burget* and *The Board of Excise* v. *Detterlien* (Manuscript Opinions, filed December 9, 1889), and determined adversely to appellants, further discussion is unnecessary.

We think the conclusions reached in those cases were correct, and that the judgment appealed from should be affirmed, with costs.

Lawrence, J. :

I concur with Justice O'Brien in affirming the judgment rendered at the Special Term on these grounds :

*First.* That the defendants are estopped from questioning the validity of the bond upon which the action is brought. Having obtained the license for Eckman on the faith and strength of that bond, the defendants should not be permitted to repudiate their obligation, nor aided by the court in escaping the consequences of a violation of its condition.

*Second.* I am further of the opinion that there was a violation of the condition of the bond in selling liquor to a minor under the age of fourteen years, for the reason that by such sale the obligor suffered his

place of "business to be *disorderly*," within the fair and proper construction of that term as used in the bond. In other words, that the term "disorderly" should not be limited in its construction or application to the definition contained in the Penal Code, but should receive the broad and general signification given to it at common law and by the lexicographers.

Van Brunt, P. J. (dissenting):

The plaintiffs in this action are the excise commissioners of the city of New York, and this action is based upon an alleged breach of the condition of a bond given by the defendants to the people of the State of New York upon the issuance to the defendant Eckman of a license to sell strong and. spirituous liquors upon the premises No. 21 Rutgers place.

It is not necessary, in view of the conclusion to which I have arrived, to consider the condition of the bond or the question as to the act complained of being a breach of such condition, matters which were argued upon this appeal.

The complaint alleges that the plaintiffs are the commissioners of excise; that the defendant Eckman made his application to said commissioners for the issuance of a license to sell strong and spirituous liquors, etc., in quantities less than five gallons at a time, to be drank upon the premises, and that said Eckman, as principal, and the other defendants, as sureties, duly made and executed to the people of the State of New York and delivered to said board of commissioners a bond, as required by the statutes of this State; that the commissioners approved the bond and issued to the defendant Eckman a license to sell strong and spirituous liquors, and that subsequently said bond was filed in the office of the clerk of the city and county of New York. The complaint further alleges a breach of the condition of the bond and demands judgment for the penalty.

Three points were raised upon the argument: The first as to the plaintiff's right to maintain the action; the second as to the commissioners' power to receive a bond from the defendant Eckman upon the granting of a license to him; and the third as to the violation of the condition of the bond. The last question, as has already been intimated, it is not necessary to discuss.

If the bond has any validity whatever, and can be enforced by anybody, it is plain that the commissioners of excise have the power to maintain this action, because section 24 of chapter 628 of the Laws of 1857, which is still in force, provides that " whenever a breach of the condition of such bond given upon the granting of any license shall happen, it shall be the duty of the commissioners   *   *   * to prosecute the same and recover the penalty therefor." There seems to be no question, therefore, but that the commissioners may maintain an action to recover for a breach of the bond provided any recovery at all can be had thereon.

One of the grounds upon which the decision of the court below rested, as appears by the opinion, was, that the instrument was exacted, but voluntarily executed and delivered to obtain the desired license, and that the obligors should not be permitted to question the validity of an obligation thus assumed.   And it has been claimed, therefore, that even if there is no statutory provision requiring a bond to be given, it being discretionary with the commissioners as to the person to whom, and the conditions upon which a license should be issued, that if said commissioners require a bond as a condition precedent to the issuance of a license, it can be enforced if its conditions are violated.

It seems to me that a very plain answer to this proposition is, that there is no allegation in the complaint that this bond was exacted as a condition of issuing a license in the exercise of any discretion upon the part of the commissioners; but, on the contrary, it is alleged to have been a bond delivered as required by the statutes of the State; and, therefore, unless its delivery was required by the statutes of the State, it never had any legal existence; and, as will be seen hereafter, the commissioners have no power to exact additional obligations to those mentioned in the statutes as conditions of issuing a license.   They have a discretion to refuse to issue a license, but when they issue the license the licensee is under no obligation, except those which the statute imposes.

It has been suggested that the excise board have an absolute discretion in reference to the conditions exacted because of the provisions contained in section 4 of the chapter above referred to, which provides that all licenses shall be signed by the commissioners granting the same, but they shall not be issued until the requirements

fixed by the board shall have been complied with. But this provision evidently refers to the rules which the board shall adopt in reference to the manner in which the business of applying for licenses shall be carried on, the nature of the proof of the facts necessary to be established to the satisfaction of the board of excise before they issue a license, the nature of the security upon the bonds to be approved by them, and the amount of the license fee.

It certainly was not the intention of the legislature to give the board of excise the right to impose any such arbitrary conditions as they might choose under the provisions of the section referred to as a condition of the issuance of a license.

A very brief history of the legislation in respect to the question of the issuance of licenses will, it seems to me, demonstrate the fact that there is no requirement of statute at the present time under which a bond may be exacted by the excise commissioners as a condition of issuing a license other than in case the applicant proposes to keep an inn, tavern or hotel.

By chapter 628 of the Laws of 1857, section 2, it is provided that the commissioners of excise shall have the power to grant licenses to keepers of inns, taverns or hotels, being residents of the town or city where such inn, tavern or hotel is proposed to be kept, to sell strong and spirituous liquors and wines to be drunk in their houses respectively; and to storekeepers, being such residents, licenses to sell such liquors and wines in quantities less than five gallons, but not to be drunk in their shops, houses, outhouses, yards or gardens, and it was also provided that they should have power to determine the sums to be paid for a license for each person applying within certain limits; and by section 6 it is provided that licenses shall not be granted to any person to sell strong and spirituous liquors and wines to be drank on the premises of the person licensed unless such person proposes to keep an inn, tavern or hotel, nor unless the commissioners are satisfied that the applicant is of good moral character, etc., nor unless on the petition of not less than twenty respectable freeholders of this State residing in the election district where such inn, tavern or hotel is proposed to be kept, etc. Section 7 provides that no such license to keep an inn, tavern or hotel shall be issued until the applicant shall have executed and delivered to the board a bond to the people of the State in the penal sum of $250 with suffi-

cient sureties  *  *  *  conditioned that such applicant during the time he shall keep *such inn, tavern or hotel* will not suffer it to be disorderly, etc.

Section 10 provides that no inn, tavern or hotel-keeper, who shall trust any person other than those who may be lodgers in his house, for any sort of spirituous liquors or wines shall be capable of recovering the same by any suit.

Section 11 provides that in all licenses that may be granted (except to inn, tavern or hotel keepers), to sell strong and spirituous liquors or wines in less quantities than five gallons, there shall be inserted an express declaration that such license shall not be deemed to authorize the sale of any liquors, etc., to be drank in the house or shop of the person receiving such license, etc.

Section 12 provides that such licenses shall not be granted unless the commissioners are satisfied that the applicant is of good moral character, nor until such applicant shall have executed a bond to the people in the penal sum of $500, who shall justify in double the amount, conditioned that he will not sell or suffer to be sold any strong or spirituous liquors or wines to be drank in his shop or house, etc.

Thus it would appear that there were two classes of persons to whom the commissioners might issue licenses. The one was those who proposed to keep an inn, tavern or hotel, who should give a bond in the penal sum of $250; and the other class of licenses being issued to those persons who proposed to sell liquors and wines, less than five gallons not to be drank upon the premises, who were required to give a bond in the penal sum of $500.

The foregoing law remained substantially unchanged until the year 1870, when, by chapter 175 of the laws of that year, the legislature greatly extended the power of the commissioners to issue licenses.

Section 4 of that act provided that the board of excise shall have the power to grant licenses to any person of good moral character, approved of by them, permitting him to sell and dispose of, at any one named place within such city, town or village, strong or spirituous liquors, wines, ale and beer in quantities less than five gallons at a time, upon receiving a license fee to be fixed in their discretion, not less than thirty nor more than one hundred and fifty dollars; such license shall only be granted on written application of

said party, signed by the applicant or applicants, specifying the place for which license is asked, and the name or names of the applicant or applicants, and of every person interested or to be interested in the business, to authorize which the license shall be issued. Persons not licensed may keep, and, in quantities of not less than five gallons at a time, may sell and dispose of strong and spirituous liquors, wines, etc., provided that no part thereof shall be drunk or used in the building in which the same shall be so kept, disposed of or sold.

Section 6 provides that the provisions of the act passed April 16, 1857 (chap. 628 being probably referred to), except where the same is inconsistent or in conflict with the provisions of the act of 1870, shall be taken and construed as part of that act, and be and remain in full force and effect throughout the whole State.

The question is presented whether, under this act of 1870, the board of commissioners can exact a bond as a condition of granting a license except from a person who proposed to keep an inn, tavern or hotel.

It seems to me clearly that no such right exists. The provisions of the act of 1857 in respect to the giving of a bond are totally inapplicable to the case of a license issued to sell liquor to be drank upon the premises, unless the person keeps an inn, tavern or hotel.

It is to be observed that, under the act of 1857, two classes of licenses are mentioned, and under the act of 1870 but one is referred to. The restriction upon licensees who do not propose to keep an inn, tavern or hotel that they shall not sell liquor in quantities less than five gallons to be drank upon the premises is abolished. And we have a general power to grant licenses, to any proper persons who apply for the same, to sell liquor in quantities less than five gallons to be drank upon the premises; the conditions being that the persons shall be approved by the commissioners and be of good moral character, with certain details in regard to the method of application.

Now, if such an applicant who does not propose to keep an inn, tavern or hotel is chargeable with the duty of furnishing a bond, which bond is it? The bond which the hotel keeper is bound to give under the act of 1857, or the bond which the other licensees are required to give where they sell liquor in quantities less than five gallons, but which cannot be drank upon the premises?

The new licensees under the act of 1870 are certainly more nearly allied to the latter class than they are to the former, and the act of 1870 is evidently intended to be a removal of the restriction placed by the act of 1857 upon the second class of licensees, that no part of the liquor sold by them shall be drank upon the premises; and such restriction being removed, the provisions of section 12 of the act of 1857, in regard to that class of licensees, became absolutely inapplicable, because one of the conditions of the bond which they are required to give is that the licensee will not sell or suffer to be sold any strong or spirituous liquor to be drank in his shop or house, a thing which he is expressly authorized to do by the act of 1870. Therefore, the provisions of the act of 1857, in reference to such licensee giving a bond, are in conflict with the provisions of the act of 1870 and inconsistent therewith, and were not re-enacted by the provisions of section 6 of said act above referred to.

It is clear that the provisions, in regard to bonds to be given by hotel keepers, cannot apply to saloon keepers, because the condition of that bond, as fixed by the statute, is that such applicant, during the time he shall keep such inn, tavern or hotel, will not suffer it to become disorderly, And, as has already been seen, the commissioners of excise have no power to alter the statutory condition of a bond in any particular.

The next legislation upon the subject is by chapter 549 of the Laws of 1873, under which section 4 of the act of 1870 is amended by requiring a posting of the license and compelling the board of excise to keep a record of all persons licensed, etc.

In 1883, by chapter 340, it was enacted that the board of excise, in cities of this State having a population of over three hundred thousand, shall, if all other requirements of the law have been complied with, have power to grant licenses to sell strong and spirituous liquors, etc., to be drank on the premises, to any person or persons of good moral character, whether or not they propose to keep an inn, tavern or hotel, provided that no such license shall be granted unless such commissioners are satisfied, upon examination, that the applicant is of good moral character and the license may properly be granted for such sale in the place proposed; the legislature here clearly indicating again that by the act of 1870 the provisions of the act of 1857, in regard to hotel keepers, were not interfered with,

but that the provisions of the act of 1870 were a mere removal of the restrictions upon the other licensees in respect to the sale of their liquors.

It has been urged that the use of the language in this section, " if all other requirements of the law have been complied with," is a recognition of the duty of such an applicant to give a bond under the act of 1857. But, as already seen, if any bond is to be given, it was a bond such as a store keeper was required by that act to give, and not the bond which the hotel keeper was required to give ; and that the condition of such a bond, as required by the act of 1857, was absolutely incompatible with the provisions of the act of 1870.

We next have chapter 496 of the Laws of 1886, purporting to amend chapter 340 of the Laws of 1883, entitled " An act to regulate the sale of intoxicating liquors in cities having a population of over 300,000 inhabitants." By this act the limit was reduced to 150,000, and provision was made for application to the court in case a license should be arbitrarily refused. The words, " if all other requirements of the law have been complied with," are also inserted in this act, but, as already seen, this evidently cannot refer to the giving of the bond required by the act of 1857.

It may be said that it is a harsh condition to compel an inn keeper to give a bond .and not other persons. But the courts cannot be responsible for the omissions of the legislature ; neither can we complete, by judicial decision, that which the legislature has left unfinished. It seems to me it was evidently the intention of the legislature to abolish the exaction of bonds ; trusting for the enforcement of discipline to the additional powers which were given to the board of excise to revoke licenses, a power which did not exist in them under the act of 1857.

I am of the opinion, therefore, that there was no power in the board of commissioners to exact the bond in question, and, therefore, there can be no recovery thereon, and that the demurrer should have been sustained.

The judgment appealed from should be reversed, and the demurrer sustained, with costs.

Judgment affirmed, with costs.