# CASES

## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF MINNESOTA.

CITY OF MINNEAPOLIS v. ALFRED OLSON and Others.

April 7, 1899.

Nos. 11,270 [1]—(149).[2]

Intoxicating Liquor—License—Bond to City of Minneapolis Invalid—
  G. S. 1894, § 2026.

The city of Minneapolis has no authority, under G. S. 1894, § 2026, to take from an applicant for a liquor license a bond running to the city as obligee, but the bond provided for in that section must run to the state. The city took such a bond, in the penal sum of $2,000, running to itself, conditioned as provided in said section, and conditioned further that the principal obligor therein will "comply with all the provisions of the city ordinance relating to the licensing of the sale of intoxicating liquors." The license was issued. The licensee committed a breach of the ordinance, was convicted and fined therefor, and paid the fine. Thereupon this action was brought to recover the penalty of the bond. *Held*, the city had no authority, under its charter, to take such a penal bond and the action cannot be maintained.

Appeal by defendants Alfred Olson, J. A. Sederberg and Julius H. Shaw from an order of the district court for Hennepin county, Simpson, J., overruling their demurrer to the complaint. Reversed.

*Henry J. Gjertsen* and *Brooks & Hendrix*, for appellants.

Plaintiff can recover, if at all, only on the theory that the entire penalty accrued to it at once on a single violation of its ordinance "relating to the licensing of the sale of intoxicating liquors," for otherwise damages must be alleged. 4 Am. & Eng. Enc. (2d Ed.)

[1] See note on page iv, supra.      [2] October, 1898, term.

76 M.—1

698; 3 Enc. Pl. & Pr. 648. Laws 1887, c. 6, is the only source of authority which the city had for exacting a bond. Village of St. James v. Hingtgen, 47 Minn. 521. Neither the statute, nor the ordinance, nor the bond provides for payment of the full sum on breach of condition. Penalties are never extended by implication; and unless expressly imposed cannot be enforced. Elliott v. Railroad Co., 99 U. S. 573; State v. Estabrook, 29 Kan. 739. The statutory bond is a bond to secure to the state, for the benefit of the county, the payment of such fines and penalties as may be imposed for violation of state laws covered by the condition of the bond, or such other damages as the state or county may sustain by a breach. The bond should run to the state. Municipal corporations derive their powers from the legislature, and any doubt whether a power has been granted will be resolved against the corporation. Breen v. Kelly, 45 Minn. 352; City of St. Paul v. Chicago, M. & St. P. Ry. Co., 63 Minn. 330; Sexson v. Kelley, 3 Neb. 104. The statute not having provided that the bond should run to the city, the necessary implication is that it should be taken in the name of the state. Village of St. James v. Hingtgen, supra; Sexson v. Kelley, supra. The breach alleged relates to an extra-statutory and void condition in the bond. The city has no right to receive a bond containing any conditions other than those provided by statute; and the effect of any general condition in the bond, not required by statute, will at least be limited to the particular provisions required by it. Lowe v. City, 4 Okl. 287; State v. Vinson, 5 Tex. Civ. App. 315; U. S. v. Bradley, 10 Pet. 343; City v. Diaz, 89 Cal. 467; Rubelman v. Greve, 18 Mo. App. 6; Black, Intox. Liq. § 198; U. S. v. Humason, 5 Sawyer, 537, 6 Sawyer, 199; Crosby v. Snow, 16 Me. 121; U. S. v. Tingey, 5 Pet. 114; Armstrong v. U. S., Peters (C. C.) 46; Polk v. Plummer, 2 Hun, 500; U. S. v. Brown, Gilpin, 155.

*Merrick & Merrick*, for appellant Julius H. Shaw.

*Frank Healy* and *L. A. Dunn*, for respondent city.

The damages need not be alleged. The designation by statute of a specific sum as a penalty constitutes the bond a covenant for liquidated damages or a penalty imposed, against which equity cannot

relieve. The analogy of the bond is that of a bail or peace bond rather than that of an official bond, or bond conditioned on the performance of a contract; that is, one of indemnity or security. Quintard v. Corcoran, 50 Conn. 34; Lightner v. Com., 31 Pa. St. 341; People v. Harrison, 28 How. Pr. 247; Ship Oteri, 67 Fed. 146; Treasurer v. Patten, 1 Root (Conn.) 260; Green v. Timmons, 28 Mo. App. 459; Tripp v. Norton, 10 R. I. 125; Clark v. Barnard, 108 U. S. 436, 457; U. S. v. Montell, Taney, 47; 2 Story, Eq. Jur. § 1326; Benson v. Gibson, 3 Atk. 395; Keating v. Sparrow, 1 B. & B. 367. Where damages would be wholly uncertain, and incapable or difficult of being ascertained, except by mere conjecture, they will usually be considered liquidated. 1 Sedgwick, Dam. § 416; Mason v. Callender, Flint & Co., 2 Minn. 302 (350); 4 Am. & Eng. Enc. (2d Ed.) 698, note 2. It is not necessary that the bond should provide that the amount is to be forfeited on breach, that being necessarily implied. Quintard v. Corcoran, supra. See State v. Harris, 50 Minn. 128.

The bond should run to the city. Its authority to take the bond does not depend on Laws 1887, c. 6, but is derived from its charter. State v. Harris, supra. See Cooper v. People, 41 Mich. 403. Sexson v. Kelley, 3 Neb. 104, is practically overruled by Thomas v. Hinkley, 19 Neb. 324. See also Van Deusen v. Hayward, 17 Wend. 67; Ring v. Gibbs, 26 Wend. 502; Tripp v. Norton, 10 R. I. 125; Redpath v. Nottingham, 5 Blackf. (Ind.) 267. Defendants are estopped from denying their liability under the bond. If parties contract in view of a statute, it may be regarded as incorporated in the contract and binding on them. Cooley, Const. Lim. 455; Lowe v. City, 4 Okl. 287. Where a bond is voluntarily entered into, and the principal enjoys the benefit, and a breach occurs, it is too late to question its validity. The parties are estopped from availing themselves of such a defense. U. S. v. Hodson, 10 Wall. 395; State v. Taylor, 10 S. D. 182; U. S. v. Mora, 97 U. S. 413; Morse v. Hodsdon, 5 Mass. 313; City v. Shallcross, 14 Phila. 135; Matthews v. Lee, 25 Miss. 417; McCaraher v. Com., 5 W. & S. 21.

CANTY, J.

The defendant Olson applied to the city council of Minneapolis for a license to sell intoxicating liquors at a designated place in that

city. With his application, he presented a bond executed by himself as principal, and the other two defendants as sureties. The bond is in the penal sum of $2,000, runs to the city as obligee, and is conditioned as follows:

"Whereas, Alfred Olson, principal in this bond, has duly applied to the city council of said city for license to sell intoxicating liquors in said city, and, if so licensed, he will not sell or otherwise dispose of any intoxicating liquors at any place other than the room named in such license, nor on the Sabbath, nor on any general or special election day, and that he will keep a quiet and orderly house, and not permit gambling with cards, or with any other means or device, for money or its representative, or other thing of value, in the house or place of business of said Alfred Olson, and will not sell, barter, give or otherwise furnish or dispose of such liquors to any minor person, or to any pupil or student in any public school, academy, seminary or other institution of learning, nor to any intemperate person nor habitual drunkard, and comply with all the provisions of the city ordinance relating to the licensing of the sale of intoxicating liquors, then this obligation to be void, otherwise of force."

This bond, with a proper affidavit and application, was filed with the city clerk; and the city council approved it, and ordered that a license issue on it to Olson for one year from July 1, 1897, on payment of $1,000 license fee, which he paid into the city treasury, and thereupon the license was issued. Thereafter he kept his saloon open on Sunday, November 7, 1897, contrary to the city ordinance, was arrested on a warrant, tried and convicted of that charge in the municipal court, and sentenced to pay a fine of $50, which he paid; and his license was also declared forfeited. This action is brought to recover $2,000, the penalty named in the bond. The defendants demurred to the complaint on the ground that it does not state a cause of action, and appeal from an order overruling the demurrer.

It will be observed that this action can be maintained only on the theory that this is a penal bond, and the action is for the recovery of the penalty. Appellants contend that the city had no authority to take any such bond; that the bond provided for in G. S. 1894, § 2026, should run to the state; and that the city is not authorized, by its charter or any other statute, to take such a bond running to itself. It will be observed that the conditions of this bond are the same as those prescribed by section 2026, except that one more con-

dition is added. The bond is conditioned that the principal obligor will "comply with all the provisions of the city ordinance relating to the licensing of the sale of intoxicating liquors." It was settled by Village of St. James v. Hingtgen, 47 Minn. 521, 50 N. W. 700, that the bond provided for in section 2026 must run to the state as obligee, and that the village had no authority under that section to take such a bond running to itself. If this is true as to the village, it is equally true as to the city. It was there said, at page 523:

"Under the statute last referred to, counties, cities and villages are still authorized to issue licenses; but the provision in relation to the bond is general, applicable to all alike, and there is nothing in this statute modifying the general rule, or from which it can be fairly implied that the bond should run to the separate municipality instead of to the state."

This decision is in line with State v. Peterson, 38 Minn. 143, 36 N. W. 443, where it is held that Laws 1887, cc. 5, 6, 81, are complete in themselves. The tenor of that decision is that these acts constitute a license law, wholly independent of, and separate and apart from, the different city charters. Speaking for myself alone, I would say that I have always been of the opinion that these acts were intended largely as modifications of, and amendments to, the different city and village charters; and this is especially evident from a reading of chapter 5, §§ 1, 2 (G. S. 1894, §§ 2022, 2023). But it has always been held otherwise, and to overrule the decisions now would result in confusion. Then we cannot hold that section 2026 authorized the city to take in its own name the bond therein provided for.

Our attention has not been called to any provision of the city charter which, in our opinion, authorizes the city to take any such bond. Respondent cites Sp. Laws 1881, c. 76, subc. 4, § 5 (p. 434), which provides:

"The city council shall have full power and authority to make, ordain * * * all such ordinances for the government and good order of the city, for the suppression of vice and intemperance and for the prevention of crime, as it shall deem expedient, and in and by the same to declare and impose penalties and punishments, and enforce the same. * * * And for these purposes said city council shall have authority by such ordinances: First, to license and

regulate   *   *   *   all persons vending, dealing in or disposing of spirituous, vinous, fermented or malt liquors."

Then follow numerous other specifications of powers granted to the city council.   Section 6 (page 438), provides:

"The city council may impose punishment for any breach of any ordinance of the city to the extent of a fine not exceeding one hundred dollars and imprisonment in the city prison or county jail not exceeding ninety days."

The contention seems to be that, while the "punishments" mentioned in section 5 are limited to a fine not exceeding $100 for each breach of the ordinance, the "penalties" mentioned are unlimited, and therefore the city council can, for the purpose of enforcing its ordinances, impose any amount of penalty it sees fit.   We cannot so hold.   The authority to impose penalties, and especially excessive penalties, must be strictly construed.   The utmost which these two sections authorize is the imposition of a penalty of $100 in lieu of a fine of that amount.   Whether, under the general powers granted by the charter, the council could require a bond in the sum of $2,000 to secure the payment of all such fines and costs as would be imposed for violation of the ordinances, and whether this is such a bond, we need not consider.   No fine or costs remain unpaid in this case, but the city is attempting to enforce this bond as a purely penal bond.   In our opinion, the city has no authority to take or enforce any such bond.

The order overruling the demurrer is reversed.