STATE v. M. J. LARSON and Another.[1]

May 3, 1901.

Nos. 12,556—(7).

**Intoxicating Liquor—Bond of Seller.**

> The bond to be executed by a person making application for a license to sell intoxicating liquors, in accordance with G. S. 1894, § 2026, is one of indemnity, given to protect the state as well as such private parties as are authorized to maintain actions under the provisions of section 1992. The amount thereof, fixed by statute at $2,000, is a penalty, and not in the nature of liquidated damages, to be recovered as an entire sum in case any of the conditions of the bond are violated.

Appeal by defendants from an order of the district court for Renville county, Powers, J., overruling a demurrer to the complaint. Reversed.

*A. J. Volstead, E. L. Winje, Robert Jamison* and *Cobb & Wheelwright,* for appellants.

*A. V. Rieke,* County Attorney, and *W. A. McDowell,* for respondent.

COLLINS, J.

This is a civil action brought by the state against Martin J. Larson as principal, and the other defendants as sureties, upon a liquor bond given pursuant to G. S. 1894, § 2026. A general demurrer to the complaint was overruled by the court below, and the case is here upon an appeal from the overruling order.

The complaint alleges the application of the principal for a license; the execution of the bond in the sum of $2,000; the issuance of a license; that on a day certain, in violation of the laws of the state and of the ordinances of the village, he sold certain malt

[1] Reported in 86 N. W. 3.

liquors to one Krinsberg, who was then a minor, under the age of twenty-one years; that he was duly arrested under a warrant issued out of a justice's court for the violation aforesaid, was arraigned in said court, and, in proceedings thereafter had, was duly convicted of the offense of which he was charged, was ordered to pay a fine of $25 and costs of prosecution, and in default thereof to be imprisoned in the common jail of Renville county for a term not exceeding thirty days, or until said fine and costs were paid; that he paid said fine and costs, and was duly discharged from custody.

The question is, was a cause of action stated upon this bond when it appeared that the offender had paid the fine and costs imposed upon him by the court as a penalty for a violation of the law which prohibits the sale of malt liquors to a person under the age of twenty-one years, there being no special damages alleged in the complaint? Or, stated in another form, the question is whether the sum of $2,000, the amount specified in the bond, shall be treated as a penalty, the amount recoverable to be measured by the actual damages; or is the amount to be treated as liquidated damages, the whole thereof to be recovered in a single action brought by the state, whenever the condition of the bond has been violated? It is a question of statutory construction, and must be decided by taking into consideration the entire statute regulating the sale of intoxicating liquors, in our endeavor to ascertain the legislative intent.

A majority of the court are of the opinion that the amount specified in the bond must be treated as a penalty, to be enforced to the amount of actual damages and no further, and that the whole sum of $2,000 cannot be considered as liquidated damages; the whole to be collected in case of any infraction of the law, technical or otherwise, intentional or unintentional. While the question is not without perplexity, we are somewhat influenced by the belief that, in the absence of any express provision, such an instrument, executed in compliance with a law which recognizes traffic in intoxicating liquors as a legitimate business, should not be rigidly construed when the result will inevitably be oppressive and unjust. The law is that the authority to impose penalties,

and especially excessive penalties, must be strictly construed. City of Minneapolis v. Olson, 76 Minn. 1, 78 N. W. 877. The legislature may see fit, in the future, by express enactment and in positive language, to exact the pound of flesh; but for many years, at least since Shylock demanded strict compliance with the condition of his bond only to meet with disaster, such exactions have not met with favor in or out of judicial tribunals.

It is evident that the statutes of this state bearing upon intoxicating liquors are in a very complicated condition. This is undoubtedly the result of enactments at nearly every legislative session since we became a state, without regard to existing statutes, and oftentimes producing absolute conflict. As early as 1858 a bond was required from licensees, with conditions similar to those now found in section 2026, the amount thereof to be $1,000. In the year 1862 the amount of the bond was decreased to $500, the conditions being those that had theretofore prevailed. In 1887 the license fee was greatly increased, and also the amount of the bond, the latter being fixed at $2,000. The conditions to be contained therein were not materially altered. The law of 1858 provided for a revocation of licenses in case conditions of the bond were violated, and the further provision making the obligors liable for all damages done by persons intoxicated by liquors obtained from the principal was a feature of the law, and it still remains a part of section 1992. In 1872 the last clause now found in said section was added, whereby the sureties upon the bond were made "jointly and severally liable with the principal for the payment of said damages, to be recovered in a civil action." For more than twenty-eight years this clause, which gives a right of action upon the bond to a private person in case he sustains damages at the hands of an intoxicated person, has been in force. It is still in force unless it is abolished by this court, as it would be, practically, should we sustain the position of counsel for the state.

It is evident that the legislators who enacted these provisions as to the right of the injured persons to recover in civil actions on account of all damages done by intoxicated persons to them were of the opinion that the amount fixed in the bond was simply

a penalty, to be recovered, as occasion might require, by different plaintiffs, and to the amount each might be injured. We believe it to be a rule of general application that the amount of a bond of this character—nothing but a contract—must be treated as a penalty, rather than as liquidated damages. In any event, when the intent of the parties appears, as it does here, to be doubtful and uncertain, no good reason exists why such an instrument should be rigidly and narrowly construed. Such a construction is not at all necessary for the enforcement of the laws regulating the sale of intoxicating liquors; for other and adequate remedies are provided.

It seems to us, aside from that section of the law hereinbefore quoted, and to which further reference will be made, that the legislature could not have intended that the entire amount of the bond should be recovered for a single offense on the part of the principal obligor. The bond may be violated, as may be the liquor laws of this state, unintentionally, and without a purpose to disregard the statute. Take the case now before us: The sale made by Larson was to a minor. It was, under the law, made at the risk of the former; for it was incumbent upon him to know whether the purchaser was a minor or an adult. In this respect, the sale was at his peril. If he sold to a minor in the belief, and having every reason to believe, that the latter was over the age of twenty-one years, his want of knowledge as to the real fact was no defense. Intent or knowledge is not an essential element in the commission of the offense. Every person violating the law in this particular way is declared guilty of a misdemeanor, and may be punished by a fine of not less than $25, nor more than $100, or be imprisoned in the county jail for not less than thirty, nor more than ninety, days. If the construction placed upon the bond by the counsel for the state is correct, the fine, including costs of prosecution, may be in excess of $100. In addition to this, the license, for which the violator must have paid $500 or $1,000, possibly more, depending upon the population and the ordinances in his municipality, is revoked without further action (sections 1993, 2001), and this may occur on the very day on which he has paid for the license. The result might be that for an uninten-

tional violation of the law, made a misdemeanor by statute, with a minimum fine of $25, and a maximum of $100 and costs, the offender would be compelled to pay over for a single offense, not knowingly committed, over $2,100, and lose the amount of his license fee ($1,000) in addition. In no case could he escape with a loss of less than $2,025, and possibly all or part of $500 more, the amount of his license fee.

It may be argued that under our construction conviction of a violation, in a court of competent jurisdiction, must precede an action upon the bond, and for this reason such construction is radically wrong. Probably conviction before a civil action can be instituted will be necessary; but power to revoke the license, and to deprive the licensee of his occupation as well as the sum he has paid for such license, in no case less than $500, is with the municipal authorities, intervention by the courts not being required. (Section 2020.) This, in itself, seems quite a severe penalty. We are not defending the saloon keeper who violates the law, nor are we upholding the business of selling intoxicating liquors, lawfully or unlawfully, when we say that such a result would be strikingly unjust, and smack strongly of persecution. While it may not violate the constitutional provisions forbidding the imposition of excessive fines, or the infliction of unusual punishments, this penalty would be exceedingly excessive, and of a character to shock our sense of justice and right. It would remind us of the days when trivial offenses were punished by absolute and wholesale confiscation of the offenders' estates. In practice, that would frequently be the result should the amount of the bond be declared liquidated damages. We cannot believe that the legislature intended any such drastic measure; for, had that been the design, the law would have so stated. This has been done in several states; it being expressly provided in some that judgment may be entered on such a bond against the principal and sureties for the full penalty thereof. In support of our views, we cite State v. Estabrook, 29 Kan. 739; Jenkins v. City, 79 Ill. App. 339.

It is not to be understood that there are no cases to the contrary, for several have been referred to, notably Quintard v. Corcoran, 50 Conn. 34, in which two Rhode Island cases are cited

as authority; the court saying that the question in issue was there decided in the same way. A glance at these cases (Tripp v. Norton, 10 R. I. 125; City v. Bligh, 10 R. I. 208) will show that no such question was presented or decided. We are also referred to some cases arising under the federal revenue law. The courts in which revenue cases are litigated have always construed the conditions found in revenue bonds with great strictness and excessive severity, and we are not inclined to accept their rules on this subject. But, as before intimated, our conclusion is largely influenced by our sense of right and justice, and also by the provision found in the latter part of section 1992, and heretofore quoted, to the effect that the principal and his sureties shall be jointly and severally liable for the payment of damages caused by an intoxicated person, to be recovered in a civil action brought by the person injured. This clearly indicates that the amount of the bond must be declared a penalty, and must be recovered as such. If the construction contended for is to be given the bond, this provision of the statute is entirely without force or effect. It is rendered nugatory, for the amount of the bond is either a penalty, or it is liquidated damages. It cannot be both. The amount cannot be declared a penalty when a civil action is brought under section 1992, by a person injured, to recover damages done by an intoxicated person, and then held to be liquidated damages in an action brought upon a complaint drawn as was the one we have before us. It cannot be one kind of a bond, for one purpose, to-day, and another kind of a bond, for another purpose, to-morrow.

The statute just referred to cannot be construed as authority for the collection of the whole amount named, by a private party, unless he has been injured in the full sum. That is, he is not authorized to enforce the obligation except to the amount of his damages. It may be suggested that an injured party might intervene in an action instituted by the state to recover the stipulated amount, but this presupposes that he is fully informed as to the facts upon which his action can be maintained, and, further, that he has knowledge of the pendency of the action brought by the state. He has a statutory right to proceed in a civil action to

83 M.—9

recover his damages, and should not be placed in a position where he must either enter into a race with the state to determine which of the two can first commence an action, or suffer a loss. Nor should he be compelled to keep watch upon all proceedings in the courts in order to protect himself by intervention when the state moves. It may also be suggested that the right to recover may be unavailing because other parties have forestalled, by similar actions, one who has the right. This suggestion would be equally as potent in any other case where the amount of a bond is in the nature of a penalty, and damages in excess thereof occur. But, in any event, we do not decide that this is not a continuing bond.

It is impossible to harmonize this particular section of the statute with the contention of counsel for the state, and for this reason, if there be no other, we are compelled to hold that the purpose of the bond was to indemnify the state as well as private parties against all damages that may actually result from any breach thereof, and not to authorize a recovery of the full amount as liquidated damages. It follows that the complaint failed to state a cause of action.

Order reversed.

BROWN, J. (dissenting).

I dissent. The court in this case has fallen into the error of construing the bond on which the action is founded on the rule of law applicable between individuals as to bonds given to secure the performance of some collateral agreement by the obligor. It is not such a bond. It is a bond given as the condition for the issuance of a license for the sale of intoxicating liquors pursuant to the statutes of the state, and as security for the observance of the liquor laws.

The act of August 12, 1858, found in Pub. St. 1849–1858, is the first expression of the legislature of this state on the subject of the sale of intoxicating liquors. A prior act of the territorial legislature contained most of the features of the act of 1858, especially with reference to the bond, and the prosecution of an action thereon, in the event of a violation of any of its conditions. By the act of 1858, a bond is required as a condition precedent to the

granting of a license to deal in such liquors,—a bond in the sum of $1,000 for a general dealer, and a bond of $500 for a license to deal in malt liquors only: The act prohibits certain sales, and provides fixed penalties for a violation of any of its provisions. There is no express declaration in that act, nor in any of the subsequent legislative enactments, as to whether the bond is to be treated as one to secure an observance of the liquor laws, or as security for the payment of such actual damages as the state may suffer by reason of a violation thereof. No statute has ever spoken directly on that subject, and whether a liquor dealer's bond be one or the other must be determined from a consideration of all the provisions of the statutes, the evident and apparent object to be subserved by its requirement, and the general rules of law applicable to such obligations.

It may be stated as a general rule of law, supported by an overwhelming weight of the authorities both in England and this country, that where a statute requires the execution of a bond to the state for a fixed and specific penalty, to be conditioned for a compliance with the laws of the state in the respects named therein, the effect is to constitute the bond a covenant for liquidated damages, or a penalty imposed by the sovereign power as a punishment for a violation of such law, unless a different intent appears. The rule is stated thus in 4 Am. & Eng. Enc. (2d Ed.) 700:

"The designation by statute of a specific sum as a penalty has the effect of constituting a bond given in compliance therewith, a covenant for liquidated damages, or a penalty imposed by the sovereign power * * * unless a different intent appears."

A distinction is made by all the authorities, where this question has been considered, between bonds executed by one individual to another to secure the performance of some collateral agreement, and a bond given, as in the case at bar, to the state, and conditioned for an observance of the law. U. S. v. Montell, Taney, 47, Fed. Cas. No. 15,798; Keating v. Sparrow, 1 Ball & B. 367; Benson v. Gibson, 3 Atk. 395; Peachy v. Duke, 1 Strange, 447; Clark v. Barnard, 108 U. S. 436, 2 Sup. Ct. 878; Murfree, Off. Bonds, § 452; People v. Eckman, 63 Hun, 209, 18 N. Y. Supp. 654; Granger v. Hayden, 17 R. I. 179, 20 Atl. 833; Coggeshall v. Pollitt, 15 R. I. 168,

1 Atl. 413; Quintard v. Corcoran, 50 Conn. 34; Daniels v. Grayson, 20 Tex. Civ. App. 562, 50 S. W. 205; Tripp v. Norton, 10 R. I. 125. The only case cited holding to the contrary is State v. Estabrook, 29 Kan. 739.

The case of Jenkins v. City, 79 Ill. App. 339, is not in point; for the bond in that case was conditioned for the payment of all fines and costs which might be imposed against the obligor for a violation of the law. The obligor was there convicted of such violation, fined, he paid his fine, and the court very properly held that by the payment of his fine the express obligation of the bond was complied with, and double recovery could not be had. The bond involved in the case at bar is not so conditioned. Its conditions are that the obligor will not sell, or otherwise dispose of, any intoxicating liquors on the Sabbath day, nor on any general or special election day, and will not sell, barter, give away, or otherwise furnish or dispose of such liquor to any minor, or to any pupil or student in any public school, nor to an habitual drunkard; and, if the said obligor shall faithfully observe and perform all the terms and provisions of any and all ordinances of the village of Sacred Heart relating to the sale of intoxicating liquors, then the obligation shall be void; otherwise to remain in full force and effect.

In the absence of some expression of the legislature to the contrary, the bond in question must be construed in harmony with this general rule of law. Our statutes will be searched in vain for any such expression. But, on the contrary, an intent to follow and apply the rule is clearly shown. It is found in two very prominent provisions of the act of 1858 (page 341, § 7), that are entirely ignored by the majority opinion. One is the provision requiring county attorneys, sheriffs, constables, and justices of the peace having knowledge of any violation of the law with respect to the sale of intoxicating liquors to make complaint thereof, and prosecute the offender. The other provision is contained in the same section, and reads as follows:

"It shall also be a duty of the district attorney to prosecute the bond given by such applicant, as is required by the second section of this act."

These two provisions have been brought down from 1858, and the substance of them is now found in the General Statutes of 1894. Clearly, the legislature intended by that act an offending saloon keeper to be prosecuted criminally for a violation of the statutes, and, in addition thereto, that he should forfeit the penalty of the bond as further punishment. Every sheriff, constable, or county attorney having knowledge of such a violation is expressly required to prosecute the same criminally, and in addition thereto the county attorney is expressly required to bring a civil action on the bond for a breach of any of its conditions. This shows almost conclusively that the intention was to make the penalty of the bond a forfeiture, or liquidated damages for a breach of its conditions, in addition to the penalty provided for in the case of criminal conviction.

Had the legislature intended the bond as security for the payment of damages, it would have required the prosecution of the suit thereon only in case of the failure of the saloon keeper or obligor to pay and discharge any fine imposed against him, and would not have made it the unconditional duty of the county attorney to prosecute the bond to judgment in addition to the criminal prosecution. So it must be conceded that the legislature, by the enactment of 1858, intended the penalty of the bond as a fixed and further punishment for a violation of the statutes.

It is not for the courts to say whether a statute which is constitutional is fair or just, or whether the legislature intended "to exact the pound of flesh" referred to by the majority of the court. The suggestions in their opinion on this subject would be very pertinent for the consideration of the legislature, but are not germane to a judicial construction or interpretation of the statute. The question whether a given statute is fair or just is one exclusively for legislative cognizance. Courts have nothing to do with those questions, but are limited, in interpreting or construing statutes, to ascertaining the intention of the legislature, and have no right to declare a statute invalid on the assumption that it is unjust. To do so would be a flagrant and rank usurpation of power.

It is conceded by the majority that the statute, construed as

contended for by the respondent, is not unconstitutional as imposing a cruel and unusual punishment, yet they proceed to say that the punishment imposed thereby is unfair and unjust. On this subject, I quote from the case of People v. Eckman, supra:

"It is contended, further, that because a specific penalty is prescribed for the violation of the law of selling liquors to a minor, that a recovery cannot be had on the bond. Our answer is that the legislature, having the power to regulate the sale of intoxicating liquors, could impose dual penalties for the same offense. When the statute fixes both the offense and the penalty, and declares it a misdemeanor for doing any act, such as selling liquor without a license, they are entirely independent of each other, and the conviction for the misdemeanor is no bar to an action for the penalty."

Such being the undoubted intention of the act of 1858, the provisions of which, so far as here pertinent, are a part of the statutes to-day, what amendments have been made since that time to indicate an intention on the part of the lawmaking power to change the law on this subject? The majority say the amendment of 1872 had such effect, but, as repeals or modifications of statutes by implication are not favored, the amendment of 1872 cannot possibly be so construed. It is true that the act of 1858 contained the provision that the saloon keeper should be liable for "damages done by persons intoxicated by liquors obtained from him," but the act did not provide that he should be so liable on his bond. There was no liability on the bond in this respect until the addition of a clause in 1872, which is as follows:

"And the sureties on said bonds shall be jointly and severally liable with the principal for the payment of said damages, to be recovered in a civil action."

Can this simple amendment have effect to change the whole scope and purpose of the statute? It seems to me clearly not. The mere fact that the legislature by this amendment relinquished the rights of the state under the bond in favor of injured parties can have no such operation as contended for by the majority. Suppose no person is injured at all; the bond is of no force or effect, and its execution and delivery mere idle ceremony.

The suggestion that the state may sue thereon to recover dam-

ages suffered by it is begging the question. The state suffers no damage in a pecuniary sense from the violation of its laws. In the case of such violation, its peace is disturbed, its dignity offended, and its majesty outraged. It asks for no pecuniary recompense in liquidation of such violations, but demands the swift and certain punishment of the offender. The remarks of Chief Justice Taney on this subject are very pertinent, and I quote what he says in a case where the precise question was under consideration:

"It certainly is not to be regarded as a bond with a collateral condition in which the jury are to assess the damages which the United States shall prove that they have sustained; for, according to that construction, the amount of damages would not depend upon the amount of the penalty prescribed in the section, which is graduated according to the size of the vessel, but would depend upon the discretion of different juries, and larger damages might be given where the penalty was only $400 than in a case where the penalty was $2,000. This obviously is not the intention of the law, and the United States are entitled to recover the whole sum for which the party is bound if any one of the conditions are broken. Besides, how could the United States prove any particular amount of damages to have been sustained by them in a suit on this bond? * * * It would be difficult, I think, by any course of proof, or any process of reasoning, to show that the United States had sustained any particular amount of damages in a case of this description, or to adopt any rule by which the damages could be measured by a jury, or be liquidated by agreement between the parties.

"The sum for which the parties are to become bound is manifestly a penalty or forfeiture inflicted by the sovereign power for a breach of its laws. It is not a liquidated amount of damages due upon a contract, but a fixed and certain punishment for an offense."

No difficulty is to be apprehended from an application of the provision of 1872. If a saloon keeper becomes liable to an individual for an assault committed by a person by him made intoxicated, the injured party may proceed with his action on the bond to judgment. If no such cause of action accrues, the state may proceed, or it may proceed in any event, and the individual can make application to intervene, the same as is done in all cases where several rival claimants seek a particular fund to satisfy

demands against the owner of the fund. The case of City of Minneapolis v. Olson, 76 Minn. 1, 78 N. W. 877, has no application to this case whatever. In that case the court was construing a statute conferring authority upon municipal authorities to impose a penalty for a violation of the liquor laws. No such question is presented in this case. The penalty here involved is fixed by statute, and the legislature has not delegated the power to impose it to any inferior tribunal, as in the Olson case.

If the opinion of the court in this case is adhered to as the law of this state, the liquor dealer's bond, heretofore regarded as a forfeiture fixed and certain for a violation of the law, will amount to but very little. In order that the state may bring suit thereon, if their theory be correct, there must be a prosecution of the obligor, and a failure on his part to pay the fine imposed against him. If the court should see fit and proper to sentence him to imprisonment only, as punishment for his offense, the bond is a nullity, and the state has no remedy. If the court imposed both a fine and imprisonment, the state can recover only the fine, and no proportion of the penalty for the imprisonment.

I am authorized to state that Chief Justice START concurs in this dissent.