First Appellate Department, April, 1899. Reported. 39 App. Div. 459.

Henry H. Lyman, as State Commissioner of Excise of the State of New York, Respondent, *v.* Shenandoah Social Club, Defendant, Impleaded with Fidelity and Deposit Company of Maryland, Appellant.

**Surety—Liability of, upon a bond given under section 18 of the Liquor Tax Law—An action upon such a bond is a civil action.**

The liability of a surety upon a bond given in pursuance of section 18 of the Liquor Tax Law (Chap. 112, Laws of 1896, as amd. by chap. 312 of the Laws of 1897) is not limited to the civil or criminal penalties prescribed in that act for the violation of its provisions. Upon proof that the premises were disorderly and that liquor was sold thereon on Sunday and between one and five a. m. on other days, in violation of the conditions of the instrument, the surety becomes obligated to pay as liquidated damages the penal sum mentioned in the bond, independently of the fact that a judgment for a like amount may have been recovered against the principal in an action for the civil penalties.

An action upon such a bond is not criminal either in form or substance, but is a civil action upon a contract.

Appeal by the defendant, the Fidelity and Deposit Company of Maryland, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 27th day of October, 1898, upon the verdict of a jury rendered by direction of the court.

The action is upon an excise bond given by a corporation known as the Shenandoah Social Club as principal, and this appellant as surety, to the People of the State of New York.

The bond is in the penal sum of $1,600, conditioned as follows:

"Whereas, the above bounden principal is about to apply for a liquor tax certificate in the sum of eight hundred dollars, for excise tax on the business of trafficking in liquors at 502 and 504 Sixth avenue, in the city of New York, county of New York, State of New York, under subdivision one of section 11 of the Liquor Tax Law of the State of New York. Now the condition of the obligation is such that if the said tax certificate applied for, as aforesaid, is given unto the said principal, and the said principal will not, while the business for which such tax certificate is given shall be carried on, suffer or permit any gambling to be done in the place designated by the tax certificate in which the traffic in

liquors is to be carried on, or in any yard, booth or garden appertaining thereto, or connected therewith, or suffer or permit said premises to become disorderly, and will not violate any of the provisions of the Liquor Tax Law, or any act amendatory thereof or supplementary thereto; then this obligation shall be void, otherwise it is to be and remain in full force and effect to cover every violation of the Liquor Tax Law and all fines and penalties incurred or imposed thereunder. An action for the breach of any condition of this bond may be maintained without previous conviction or prosecution for violation of any provision of said Liquor Tax Law."

This bond was given after the amendments to the Liquor Tax Law enacted in 1897 (Chap. 312) had gone into effect. It is consequently governed by the Liquor Tax Law of 1896 (Chap. 112) as thus amended. Upon the trial the plaintiff proved by undisputed and unimpeached testimony that the principal in the bond permitted the premises therein specified to become disorderly. He also proved by equally undisputed and unimpeached testimony violations of the Liquor Tax Law in that such principal sold or allowed liquors to be sold in said premises on Sunday and between the hours of one and five A. M. on other days. The defendant surety offered no testimony, but contented itself with a motion to dismiss the complaint upon the ground — we quote from the record — " that it is in form an action on a contract and not an action for statutory penalties, and that no judgment can be rendered against the defendant, the Fidelity Surety Co., as the amount of the statutory penalties cannot be fixed in this action." This motion was denied and the defendant excepted. The defendant surety company then asked to go to the jury upon the following questions: *First.* Upon the question whether on the evidence in this case there was any breach of the condition of the bond by the Shenandoah Social Club. *Second.* What breaches, if any, of the conditions of the bond by the Shenandoah Social Club the evidence proves to have been committed — that the jury may determine the question of fact with respect to such breaches, if any. *Third.* As to the amount of the penalties, if any, which should be imposed upon the Shenandoah Social Club in consequence of the alleged violations of the Liquor Tax Law, which the plaintiff claims to have proved in this action. *Fourth.* To determine what amount the plaintiff should recover against the defendant, the surety company

in this action, and that such amount, within the limit of the penalty of the bond, should be such a sum as in the opinion of the jury would fairly represent the proper penalty so found to be imposed upon the Shenandoah Social Club for the violation of the Liquor Tax Law claimed by the plaintiff to have been proved in this case, provided the jury find that such violation took place.

The court declined to submit all or any of these questions to the jury, to which declination the defendant excepted. The court thereupon directed a verdict for the plaintiff for the full amount of the penalty of the bond, $1,600, to which direction the defendant excepted.

*James R. Soley,* for the appellant.

*Royal R. Scott,* for the respondent.

BARRETT, J.   The main question presented by this appeal is whether the appellant's liability upon the bond is in the nature of a penalty or of liquidated damages. The bond was given in accordance with the provisions of section 18 of the Liquor Tax Law.   (Laws of 1896, chap. 112 as amd. by Laws of 1897, chap. 312, § 11.)   Its purpose was to secure, on the part of the principal, not only observance of the Liquor Tax Law and its special mandates, but also good behavior in other particulars essential to the orderly and proper conduct of the business.   Thus we find, as one of the conditions of the bond, that the principal will not suffer or permit any gambling to be done in the place where liquor is to be sold, or suffer or permit the premises to become disorderly. These conditions precede and are additional to the general condition that the principal will not violate any of the provisions of the law itself.   Gambling in the premises is not of itself a violation of the Liquor Tax Law.   Nor is every form of gambling necessarily a violation even of the Penal Code upon the subject of " Gambling."   Section 343 of that Code is aimed at the keeping of a room, etc., to be used for gambling, also at the letting of a room for such use by the owner or his agent, or the permitting therein by either of such use.   Section 344 defines a common gambler as a person who owns a place for gambling, or who hires or allows a room to be used for such purpose, or who engages as dealer, gamekeeper or player in any gambling or banking game. Violations of this section are made a felony.   The condition of

the bond has no special reference to either of these sections. What is required of the principal is, not that he will respect the Penal Code alone, but that he will not suffer " any gambling " in the premises. The place where liquor is sold was not deemed by the Legislature a suitable locality for gambling in any form, and yet the Liquor Tax Law prescribes no penalty, civil or criminal, for suffering or permitting it in the licensed premises. It seems quite clear, therefore, that the intention was not to limit a recovery upon the bond to the civil or criminal penalties prescribed in the act for violations of its provisions. The alternative, therefore, in the illustrative example referred to, is either a recovery of the full penal sum specified in the bond, or practically nothing. The Legislature surely meant to enforce its policy in an effective manner. Its policy and will were that there should be no gambling of any kind in premises licensed to sell liquor. How could this be enforced if proof were required of the actual pecuniary loss to the People resulting from the commission of each act of violation or non-compliance? A construction requiring this would simply nullify the law. The People sustain no direct pecuniary injury from a game of cards for money between private individuals in a liquor saloon, and yet just such an act was one of those which the bond was designed to prohibit.

We may, however, go further and say that all the conditions of the bond denote a similar purpose. It is practically a bond for the principal's good behavior as defined in the conditions. Nothing would be gained here by an analysis of the principles upon which liquidated damages and penalties rest. It is sufficient to say that the intention of the Legislature was plainly to enforce its will and compel submission to its policy by requiring from principal and surety a distinct contract to pay a definite sum of money upon the breach of any one of the defined conditions of the instrument.

It is also contended that, even if the penal sum be treated as liquidated damages, such damages are satisfied by the payment of the civil or criminal fines prescribed in the act. What we have already pointed out is also an answer to this contention. There is, however, another answer. As the law read prior to the amendment of 1897, there were no civil penalties. (Laws of 1896, chap. 112, § 34.) There were provisions only for criminal fines and for the recovery thereof upon the bond. It is evident that, under this original act of 1896, it was not intended to limit the

surety's liability to these fines, even treating them as liquidated damages. If that had been the intention, liability would have been dependent, *first,* upon proof of the principal's guilt, not by a preponderance of evidence, but beyond a reasonable doubt; and, *second,* upon the discretion of the trial court in awarding punishment. If imprisonment without fine were awarded, there would be no liability at all. The principal would first have to be found guilty beyond a reasonable doubt, and then fined. The bond on this construction would have been a sham and a farce. If, however, the main penal sum were treated as liquidated damages, the act was harmonious and the bond efficacious. If the official entitled to bring an action upon the bond chose to sue for the criminal fine and for that alone, he could do so, and in that case he might rest upon the conviction and sentence. Upon the docketing of the judgment for the fine as provided in section 36, the official was authorized by the last paragraph of that section to proceed to collect the amount of such judgment, together with the costs of collection, from the sureties on the bond. The sureties having in effect contracted to pay any such judgment, the official in the action against them was not bound to go behind it and prove the offense which resulted in the judgment. Upon the other hand, if the official sued for the full penal sum specified in the bond, as for a breach of one or more of the prescribed conditions, he had to prove the breach by independent evidence. The bond was clearly intended to cover the two contingencies and the two remedies. Civil penalties are now prescribed. (Laws of 1896, chap. 112, § 42, as amd. by Laws of 1897, chap. 312.) The act of 1896 was thereby amended to harmonize with this additional feature. To the original conditions of the bond, as prescribed in section 18, was added by the act of 1897 the further condition "that all fines and penalties which shall accrue during the time the certificate applied for is held and any judgment or judgments recovered therefor, will be paid, together with all costs taxed or allowed," thus plainly covering these new civil penalties. This is emphasized by the amendment embraced in the last paragraph of the section. That paragraph authorizes the State Commissioner of Excise, "without previous prosecution or conviction for violation of any provision of the Liquor Tax Law, *or for the breach of any condition of said bond,* commence and maintain an action, in his name, as such commissioner * * * for the recovery *of the penalty for the breach of any condition of any*

*bond, or for any penalty or penalties incurred or imposed for a violation of the Liquor Tax Law.*" Coupling this with section 42 (*supra*) the scheme of the act as amended becomes entirely clear. All questions as to the proper plaintiff in actions upon bonds given under the act, or in actions for penalties incurred, are set at rest. The State Commissioner of Excise is authorized to sue the principal for the civil penalties. He is also authorized to sue both principal and surety for the breach of any condition of the bond. These suits are independent. In the action for the civil penalties he may recover from the principal more or less than the penal sum specified in the bond, dependent upon the number of violations proved. Having thus secured his judgment against the principal, he may recover the amount thereof (to the extent of $1,600) from the surety in an action upon the bond. In such an action against the surety he need only prove the judgment against the principal. He may, however, recover upon the bond, independently, the full penal sum upon proof of the breach of any one of its conditions. The prescribed bond, plus the prescribed civil and criminal penalties, constitute the totality of legislative precaution. From the moment the tax is paid there is no trace anywhere of pecuniary interest in the People. Bond and penalties alike are then aimed at one definite end, obedience to the law and decent and orderly conduct of the business authorized by it. We think it clear that the plaintiff was, therefore, entitled to recover the penal sum of $1,600 according to the true intent and meaning of the contract.

The conclusion at which we have arrived is in entire accord with the views of the Appellate Division in the fourth department as expressed in Mr. Justice Mc LENNAN's careful opinion in *Lyman* v. *Rochester Title Insurance Co.* (37 App. Div. 236.) It is also supported by the reasoning in *People ex rel. Meakim* v. *Eckman* (63 Hun, 209)—a somewhat analogous case under the former excise act—and also by Mr. Justice DAVY's opinion at Trial Term in the late case of *Lyman* v. *Brucker* (26 Misc. Rep. 594).

There was no disputed question of fact to go to the jury. The evidence was uncontradicted and unimpeached. This was not a criminal action either in form or substance. It was simply a civil action upon a contract, and was so properly treated. The propriety of directing a verdict upon undisputed facts in such an action can not be questioned.

6

It follows that the judgment appealed from is right and should be affirmed with costs.

Van Brunt, P. J., Rumsey, Patterson and McLaughlin, JJ., concurred.

Judgment affirmed, with costs.

First Appellate Department, April, 1899. Reported. 39 App. Div. 661.

Henry H. Lyman, as Commissioner, etc., Respondent, *v.* Gramercy Club, Defendant, Impleaded with Fidelity and Deposit Company of Maryland, Appellant.

Appeal by the defendant Fidelity and Deposit Company of Maryland from a judgment against it entered upon a direction at Trial Term.

*Mr. James R. Soley,* for the appellant.

*Mr. Royal R. Scott,* for the respondent.

Barrett, J. The main question here is the same as that which we have considered in the case of the present plaintiff against the Shenandoah Club. Our opinion in the latter case covers the present, and so far as concerns the legal questions presented, calls for an affirmance of this judgment. The appellant, however, contends that the testimony here was not, as in the Shenandoah case, so clear and conclusive as to warrant a direction. We have examined the testimony and are unable to perceive any substantial difference between the facts of the two cases. That the Gramercy Club was an existing corporation when it applied for a license was sufficiently proved. The fact too was recited in the bond, and the appellant is estopped from denying that recital. (*M. L. I. Co.* v. *Bender,* 124 N. Y. 47). It is said that it was one Corey who violated the law and not the corporation. But it clearly appears that Corey was acting throughout for the corporation. He in fact practically *was* the corporation. It appears