THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* GEORGE GILLETTE, Defendant.

City Court of Rochester, Criminal Branch, December 29, 1939.

*Daniel J. O'Mara, District Attorney [Thomas P. Culhane, Assistant District Attorney, of counsel], for the plaintiff.*

*Basil E. Moore, for the defendant.*

MIX, J. The defendant is charged with unlawfully driving and operating an automobile on a highway in the city of Rochester without being duly licensed as required by subdivision 4 of section 20 of the Vehicle and Traffic Law of the State of New York.

That part of subdivision 4 of section 20 pertinent to this inquiry is as follows: " Unlicensed operators or chauffeurs cannot drive motor vehicles. No person shall operate or drive a motor vehicle upon a public highway of this State unless he is duly licensed under this chapter, whether the owner of such vehicle or otherwise, except as provided in section fifty-one of this chapter, and one who drives as a chauffeur must be licensed as a chauffeur in order to be duly licensed within the meaning of this section."

The Commissioner of Motor Vehicles had, prior to the commission of the alleged offense which the People contend is made a 'misdemeanor by subdivision 1 of section 70 of the Vehicle and Traffic Law, issued a junior license to the defendant. This license was issued in due course. No doubt is cast on its validity nor is any irregularity claimed about the application for it nor the issuance thereof. The defendant had not yet reached the age of eighteen years at the time of the commission of the alleged misdemeanor.

The defendant, therefore, having been duly licensed, the inquiry upon this motion is the determination of the question whether the method of operation was a misdemeanor. Subdivision 1 of section 20 provides in part: " No operator's or chauffeur's license shall be issued to any person under eighteen years of age, except that junior operator's licenses may be issued to minors who have arrived at the age of sixteen years, but who have not reached eighteen years of age, under rules and regulations to be established by the Commissioner, provided, however, that such license shall entitle a licensee to operate a motor vehicle elsewhere than in a city having a population of one million or more in traveling to and from school and in the usual and ordinary pursuit of the business of the parent or guardian of the licensee, but for no other purpose."

Under this section, the Legislature has clearly limited the purpose for which a holder of a junior license may operate a car to two things — going to and from school and in the usual and ordinary pursuit of the business of the parent or guardian of the licensee but for no other purpose.

The question of going to and from school is not involved in this case, so the determination is what the Legislature intended when it limited the use of a motor vehicle by a holder of a junior permit to the " usual and ordinary pursuit of the business of the parent or guardian." Was it intended to use the word " business " in the sense only of productive trade, profession or occupation? I cannot believe that such a restricted use of the word " business " was intended. Such a definition would allow a junior operator whose parent is operating a business in the conduct of which automobiles are an essential part to drive a motor vehicle in the most

crowded parts of the community without restriction and prevent such an operator from using the car of a parent not so engaged to do the household errands and chores of the parent that have always seemed unimportant, even whimsical to youth, but of prime importance to parents. Such a construction would place the decision as to the propriety of the request of the parent upon the junior operator whose junior license would be put in jeopardy. Such a construction would do violence to the morals of the community by breaking down the rules of filial obedience. Such a construction would mean that a parent who was engaged in the trucking business could send his son, a junior operator, with a truckload of merchandise through Main street, but a parent who was not using his automobile in a gainful occupation could not send his son to the corner grocery store for a package of cigarettes.

The word " business " has a broader definition. It is defined by the Standard Dictionary as follows:

" 1. A pursuit or occupation; trade; profession; calling; also, commercial affairs.

" 2. A matter or affair.

" 3. Interest; concern; duty.

" 4. A commercial enterprise or establishment.

" 5. A state of being busy."

I believe the Legislature must have intended the broader definition in the use of this word and must have meant the " interest, concern or duty " of the parent or guardian, and when we substitute those words for the word " business " in the statute, we have found a definition which readily meets with the commonly accepted custom of parents who own automobiles and who have junior operators in their family. It is the primary interest of the parent to raise his children in the station of life to which they are born. If the parent owns an automobile, it is his concern and duty to teach his children of appropriate age the operation and use of an automobile and the obligation of an automobile operator to other users of highways. If the parent is a member of a religious group, it is his concern and duty to rear his children according to the views which he holds and for that purpose it is certainly his concern to see that they are transported to church.

The recreation of youth and the supervision and regulation of that recreation are the concern and duty of the parent, no less than the duty of religious instruction and the furnishing of education. If this were not generally recognzied to be true there would be no justification for the expenditure of millions of dollars of public money upon recreational facilities. If it is the concern and duty of the parent to supervise recreation for youth, then it is the concern and

duty of a parent to furnish transportation for the youth according to his means to and from places of proper and suitable recreation, and if according to the parents' station in life he owns an automobile and feels that it is his concern to allow his son who is the holder of a junior license to take his automobile for that purpose, the law may not prohibit him from so doing under the particular clause under consideration in this section. There is no allegation in this information that the automobile was being used without the parent's permission.

There is another part of section 20 first quoted herein, the violation of which by this defendant the People contend constituted a misdemeanor. It provides that junior licenses may be issued under rules and regulations to be established by the Commissioner (of motor vehicles). Among the rules promulgated by the Commissioner is one governing the hours during which a holder of a junior license may not drive. The defendant admittedly at the time of the accident involved in this case was operating his father's automobile at a time prohibited by the Commissioner's rule. The rule restricting the use of automobiles by junior licensees to the hours of daylight is not unreasonable; but that rule was not incorporated into subdivision 1 of section 20 by the Legislature with the specification of what a junior licensee could or could not do. Subdivision 1 of section 70 says that the violation of any of the provisions of section 20 shall be a misdemeanor, but it does not state that a violation of any of the rules and regulations which the Commissioner of Motor Vehicles may make shall be a misdemeanor.

There is a well-known principle of statutory construction which is coeval with municipal law, that purely statutory offenses cannot be established by implication, and that acts otherwise innocent and lawful do not become crimes, unless there is a clear and positive expression of the legislative intent to make them criminal. (*People* v. *Phyfe*, 136 N. Y. 554.) Legislative intent to make a violation of rules of the Commissioner of Motor Vehicles, not even made at the time of the enactment of the law, a misdemeanor cannot be implied from the language used. The Commissioner has also made rules relative to the suspension and revocation of permits and licenses and if after a hearing conducted regularly by his department he finds that his rules and regulations have been violated, he may take appropriate action thereon.

I, therefore, hold that the violation of the rule of the Commissioner was not a misdemeanor and that discipline for the violation must be sought in the suspension or cancellation of the junior license by the Commissioner of Motor Vehicles.

*Plunkett* v. *Heath* (1 N. Y. Supp. [2d] 778, decided by Judge TOMPKINS of this court) does not apply here because the junior driver had a Pennsylvania license and was not licensed by the State of New York.

The opinion of Judge WILDER handed down upon the former motion to dismiss the information does not conflict with this decision. That motion was made upon the ground that the defendant was " duly licensed " and, therefore, could not be held under the section for driving without a license and on the ground that the information was based upon the uncorroborated statement of the defendant. Both motions were properly denied upon the grounds stated in his scholarly opinion.

Information dismissed, defendant dismissed and bail discharged.