60 So.2d 728 (1952)
CARNEGIE
v.
DEPARTMENT OF PUBLIC SAFETY.
Supreme Court of Florida, Special Division B.
October 14, 1952.
*729 Drew, Burns, Middleton & Rogers, West Palm Beach, for appellant.
James Whitehurst, Brooksville, for appellee.
ROBERTS, Justice.
We here review a final decree of the Circuit Court in and for Palm Beach County, Florida, entered in proceedings instituted by appellant under the provisions of Section 322.31(2), Florida Statutes, F.S.A., to obtain the reinstatement of his driver's license which had theretofore been cancelled by the Department of Public Safety of the State of Florida. The lower court denied the appellant's petition, and this appeal followed.
The circumstances leading up to the cancellation of appellant's license are briefly as follows: The appellant was driving along the Perry Highway towards Tallahassee, Florida, at a slow rate of speed, preparatory to making a turn to the right. According to his testimony, he observed a Highway Patrolman following him and signalled his intention to turn by extending his left arm out the window and moving it in a circular fashion to indicate to the Patrolman that he should come on by him, and then raised his left arm upward and pointed the hand inward, making a turn to the right. The Patrolman testified that the only signal he saw was an extension of the left arm in a horizontal position, indicating a turn to the left. The Patrolman followed the appellant down the side road for some distance and then stopped him. An amicable and friendly conversation followed, relating to the proper hand signals, and the Patrolman issued a warning ticket to appellant for an "improper signal." There is some conflict in the testimony as to the gist of their conversation, the appellant testifying that the Patrolman assured him that there would be no "follow-up" of the arrest, except that he would receive a booklet showing the proper signals, and the Patrolman testifying that the appellant stated that there were a lot of the rules and regulations that he did not know and that he would be willing to submit to a driver's examination The Patrolman also testified that he advised the appellant that he would receive a letter with respect to the violation and instructions concerning the driver's license examination; he testified further that for such a violation he did not ordinarily recommend a re-examination, but that he did so in this case because the appellant admitted that he did not know the difference between "a right and lefthand signal."
The incident above referred to occurred on February 25, 1952. On March 25, 1952, the Department of Public Safety, the appellee here, directed a letter to the appellant advising him that "Information received in this office leads us to believe that your ability to operate a motor vehicle in a safe manner is questionable," and requiring him to report to the Highway Patrol Office in West Palm Beach on April 4 for an examination. It was also stated in such letter that if he failed to qualify, his license would be cancelled and would remain so until such time as he was able to pass the examination.
On April 7, 1952, the appellant, through his attorneys, wrote the Department requesting reference to the statutory authority under which such action was taken and was advised by the Department under date of April 14, that Section 322.27, Florida Statutes, F.S.A., authorized the Department to suspend a license without hearing "upon a showing by its records or other sufficient evidence that the licensee has done one or more of several acts, one of which is, `Incompetent to drive a motor vehicle.'" It was also stated in the April 14th letter that "There is another section, 322.05, Florida Statutes, F.S.A., which prohibits the issuance of a driver's license by the Department of Public Safety to certain persons, one of which is, `to any person, when the director has good cause to believe that the operation of a motor vehicle on the highways by such person would be detrimental to public safety or welfare.'"
Thereafter, on April 28, the appellant received a notice that his driver's license had been cancelled "for an indefinite period beginning with the date of this notice, and *730 will remain cancelled until such time that you pass the required driver's license examination." The instant proceeding to obtain reinstatement of the license was filed immediately by appellant.
After hearing the testimony of the appellant and the Patrolman, the substance of which has been noted above, the Circuit Judge entered his final decree in which he stated that he agreed with petitioner's (appellant's) contention that "he has a vested right in the use of his driver's license, which cannot be taken from him without authority of law, or arbitrarily or capriciously," but stating also that the evidence in the cause did not show that the Department acted "arbitrarily or capriciously or without authority of law." It was stated further in such decree that "one must take judicial notice of the fact that there are many people driving upon the highway who have not had an examination for a driver's license for a long period of years, or even at all. This might well be a factor in a great number of automobile accidents that occur daily in this state. In view of the evidence here, this Court is unwilling to assume the responsibility for licensing one where the Department of Public Safety conscientiously believes that he is incompetent to drive a motor vehicle, at least until that can be determined with some reasonable degree of accuracy." He thereupon denied the petition "without prejudice to the right of the petitioner to seek a restoration of his driver's license by applying therefor and demonstrating his competency to drive."
It should be noted at the outset that the Department did not charge the appellant with being "incompetent to drive a motor vehicle", which would have been a ground for suspension under the provisions of Section 322.27, Florida Statutes, F.S.A.; it merely advised the appellant that his "ability to operate a motor vehicle in a safe manner is questionable," and directed him to take a driver's examination (and, although this is not material to the issues here, without warning him that his failure to take the examination would result in the cancellation of his license). The case appears to have been tried below solely on the question of whether the Department was authorized to require the appellant to stand a re-examination under the circumstances, as shown by the following colloquy between the Circuit Judge and the appellant:
"Q. Do you realize the question before me is not whether or not you should have a license, but whether or not you should take another examination? A. I am not a lawyer and I do not pretend to understand the law.
"Q. All the State has asked you to do is to take another examination and it is for your failure to take an examination that they have cancelled or superseded your license or permit." (Emphasis supplied.)
The first question, then, is whether the Department is authorized to require a re-examination under the circumstances here existing and to cancel a driver's license upon a failure or refusal to take such re-examination.
In this connection, much has been said in the briefs of both parties as to whether a license to operate a motor vehicle is a "right" or a "privilege." It has been variously denominated as "a privilege in the nature of a right," In re Wright, 228 N.C. 584, 46 S.E.2d 696, 699; a "civil right," Thrasher v. State, Okl.Cr.App., 231 P.2d 409; and as "an important right under our present mode of living," Helland v. Jones, 76 N.D. 511, 37 N.W.2d 513, 514. In Application of Goodwin, 173 Misc. 169, 17 N.Y.S.2d 426, 428, the New York court said that "He has a vested right therein which cannot be taken from him capriciously or arbitrarily." By far the majority of the courts refer to such a license as a "privilege." But whether it be termed a "privilege" or a "right," it is clear that such a license, once granted, is of substantial value to the holder. There are numerous classes of persons, such as drivers of milk trucks, laundry trucks, travelling salesmen, etc., who depend for their livelihood upon the operation of a motor vehicle; and to them their driver's license is just as valuable as a license to practice is to a doctor or lawyer. And, like such licenses, it is generally held that a driver's license may not be suspended or revoked arbitrarily or capriciously, but only in the manner and on the grounds provided by law. 60 C.J.S., Motor Vehicles, *731 § 160, page 482; 33 Am.Jur., Licenses, Sec. 66, page 382 (as to other licenses); City of St. Louis v. Mosier, Mo. App., 223 S.W.2d 117; In re Wright, supra; Sleeper v. Woodmansee, 11 Cal. App.2d 595, 54 P.2d 519; Rawson v. Department of Licenses, Wash., 130 P.2d 876; Application of Wignall, 278 App.Div. 28, 103 N.Y.S.2d 7.
There is nothing in our statutes authorizing the procedure here followed by the Department. Section 322.27, Florida Statutes, F.S.A., authorizes the Department to suspend without preliminary hearing a driver's license upon a showing by its records or other sufficient evidence that the licensee is "incompetent to drive a motor vehicle", and other grounds therein expressed, and provides further for an immediate hearing before such Department upon the question of such suspension at the request of the licensee, at which hearing the Department "may require a re-examination of the licensee." And Section 322.18, Florida Statutes, F.S.A., provides that drivers' licenses may be renewed on or before October 1st of each year without examination "unless the department has reason to believe that the licensee is no longer qualified to receive a license." But we are unable to find anywhere in the statutes express authorization for the Department's procedure in the instant case, and counsel for the Department has cited no statutory authority for such procedure. Counsel for the Department contends only that its action was merely "a denial of a privilege," and that "there is no evidence in the record that the Department acted arbitrarily or capriciously or without authority of the law." The Department relies on a single case as authority for its action here, to wit, Department of Public Safety v. Robertson, Tex.Civ.App., 203 S.W.2d 950. But this case is not authoritative here, as it appears that, under Texas law, the Director of the Department is authorized "to cause to be re-examined licensee in any case which in his judgment the licensee is incapable of operating a motor vehicle". Vernon's Texas Revised Civil Statutes 1948, Sec. 6687b(10). Other states have similar statutes authorizing a re-examination prior to the expiration of a license to determine the qualifications of a licensee, such as Section 20(8) of the Vehicle and Traffic Law of the State of New York, McK.Consol.Laws, C. 71, and Title 75, Section 168(f) of Purdon's Pennsylvania Statutes. This is perhaps a salutary provision to which consideration should be given by our Legislature; but, in the absence of such legislative authority, it must be held that the Department had no authority to require the appellant to take a re-examination under the circumstances here existing and no authority to cancel his license upon his failure to do so. In fact, the only authority to cancel a license held by the Department is that contained in Section 322.22, Florida Statutes, F.S.A. Failure to take an examination, as directed by the Department, is not one of the grounds for cancellation therein stated.
It must be held, therefore, that the Department was without authority of law to "cancel" the appellant's license, and the lower court erred in so holding.
Because it appears that the lower court may have misconceived its duties and responsibilities under Section 322.31, Florida Statutes, F.S.A., and for the future guidance of the courts in hearing "appeals" under the provisions of such statute, we feel it incumbent to point out that Section 322.31 requires the court on such appeal "to take testimony and examine into the facts of the case and to determine whether the petitioner is entitled to a license or is subject to suspension, cancellation or revocation of his license under the provisions of this chapter." In construing a similar provision of the Pennsylvania Vehicle Code, 75 P.S., § 193, the courts of that state have uniformly held that the case is heard de novo by the court and not merely as a review of the action of the department charged with the enforcment of the Vehicle Code of that state; that it is the duty of the court "to hear evidence and determine, in the exercise of [its] sound discretion and in the furtherance of justice, whether the license should be suspended." Commonwealth v. Herzog, 359 Pa. 641, 60 A.2d 37, 38. See also Commonwealth v. Eisenmenger, 365 Pa. 127, 74 A.2d 173, and Commonwealth v. Etzel, 370 Pa. 253, 86 A.2d 64. This would certainly seem to be the better rule where, *732 as in this state, the Department is authorized to suspend without a hearing, and the operator may appeal directly to a court of record from such suspension, so that the hearing before the court is the first opportunity he has had to present his side of the story and to confront and cross-examine the witnesses against him. While the policies developed by the Department in the course of its enforcement of the Drivers' License Act should be given due consideration by such Court, we hold, with the Pennsylvania courts, that such court has the jurisdiction and the responsibility to make its own findings of fact, independently of the ex parte administrative findings of the Department.
For the reasons stated, the decree appealed from is reversed.
SEBRING, C.J., and TERRELL and MATHEWS, JJ., concur.