STATE v. EMMETT A. MOSENG.

95 N. W. (2d) 6.

February 6, 1959—No. 37,476.

*Tracy, Sinclair & Rowland* and *Gordon I. Sinclair,* for appellant.

*Miles Lord,* Attorney General, *Marshall F. Hurley,* Corporation Counsel, and *Donald L. Lais,* Assistant Corporation Counsel, for respondent.

NELSON, JUSTICE.

This appeal involves an alleged violation of a restricted driver's license issued pursuant to the authority of the commissioner of highways under M. S. A. 171.09, which provides as follows:

"The commissioner shall have the authority, when good cause appears, to impose restrictions suitable to the licensee's driving ability *or such other restrictions applicable to the licensee as the commissioner may determine to be appropriate to assure the safe operation of a motor vehicle by the licensee.* The commissioner may, upon receiving satisfactory evidence of any violation of the restrictions of such license, suspend or revoke the same, *but the licensee shall be entitled to a hearing, as provided herein.*

"It shall be unlawful for any person to operate a motor vehicle in any manner in violation of the restrictions imposed in a restricted license issued to him." (Italics supplied.)

The restriction imposed upon defendant's driver's license allowed him

to drive his motor vehicle *"to and from and as required by employment Monday thru Saturday."* (Italics supplied.)

No transcript has been made of what transpired in the court below. The record is limited to a stipulation as to facts entered into between counsel together with the complaint, the judgment and sentence of the court below, stipulation of settled case, and notice of appeal. The stipulation as to facts reads in part as follows:

"Appellant was issued a motor vehicle drivers license, which was in effect at all times mentioned herein, restricted as follows: 'Driving only to and from and as required by employment Monday thru Saturday.'

"On Thursday, December 5th, 1957, appellant left his place of employment on or about 11:30 o'clock p. m., and drove his motor vehicle along a direct route from his place of employment, Newport, Minnesota, towards his home at 677 Dayton Avenue, St. Paul, Minnesota. About 12:00, midnight, appellant stopped his motor vehicle at the west curb on St. Albans Street in the City of St. Paul, immediately south of the St. Albans-Selby Street intersection. Appellant's car was then headed and facing southerly, his home being on the northeast corner of St. Albans and Dayton Avenue which is one block north of the intersection of Selby and St. Albans Street. Appellant left his motor vehicle, went into Triviski's Bar, 678 Selby Avenue, St. Paul, it being on the southeast corner of the intersection of Selby and St. Albans, to purchase refreshment in the form of beer, and appellant did purchase two (2) beers and consume them. About 1:00 o'clock a. m., Friday, December 6th, 1957, appellant left the bar, entered his motor vehicle and had just started driving away from the curb in a southerly direction when he was stopped by officers Paul Paulos and D. R. Smith of the St. Paul Police Department, who questioned appellant and placed him under arrest for driving a motor vehicle in violation of his restricted license. At the time appellant was stopped, his motor vehicle was being driven in a southerly direction about one and one-half (1½) blocks directly south of his home."

The complaint upon which the proceeding appears to have been tried was in the following form:

"The undersigned, being duly sworn, upon his oath deposes and

says: On the 6th day of December, 1957, at 1:10 o'clock a. m. Emmett A. Moseng, 677 Dayton, St. Paul, birth date 10-28-30, driver's license No. D131618, sex M, wt. 175, ht. 5, 10½, did unlawfully operate vehicle, make Olds, body type 4-door, color green, upon a public highway, namely at Selby and St. Albans located in the city, county and State aforesaid, and did then and there commit the following offense; vio restricted dl (driving only as required by employ) in violation of the (statute) (ordinance) in such case made and provided and against the peace and dignity of the State of Minnesota.

"The undersigned further states that he has just and reasonable grounds to believe, and does believe, that the person named above committed the offense herein set forth, contrary to law, and prays that the said offender may be arrested and dealt with according to law."

The issues involved are: (1) Whether a municipal court has the authority to suspend a driver's license for violation of a restriction therein; (2) whether the restrictions imposed on defendant's driver's license allowing him to drive his motor vehicle "to and from and as required by employment Monday thru Saturday" were sufficiently clear; (3) whether defendant's actions constitute a violation of the restriction imposed by the commissioner on his driver's license.

■ The prosecution against the defendant has been instituted under a state statute and he has been charged with an offense against the state. M. S. A. 171.24 governs as to the result of a violation of the provisions of § 171.09. Its provisions do not lend themselves to enforcement through the enactment of ordinances by any city or municipal subdivision. Section 169.02, subd. 2, of the Highway Traffic Regulation Act provides when a violation of the provisions of c. 169 shall constitute a misdemeanor, and § 171.24 provides, with certain exceptions, when violations of any of the provisions of c. 171 shall constitute a misdemeanor. Interpreting §§ 171.09 and 171.24 together, it is clear that it was the legislative intent to make it a misdemeanor for any person to operate a vehicle in any manner in violation of the restrictions imposed in a restricted license. Section 610.19 provides for punishment of misdemeanors when not fixed by statute.

The court below imposed upon defendant a year's suspension of his

driver's license and also a 15-day workhouse sentence on the ground that he was guilty of a misdemeanor. Of course it is clear that if both of these penalties are imposed it will for all practical purposes make it impossible for defendant to continue on the job that he now has. No doubt the reason for the issuance of the restricted license, as the state agrees, was for the very purpose of permitting defendant to earn a living on a job wherein it was necessary for him to drive to and from his employment *because no public transportation was available for that purpose.*

A careful reading of the provisions of c. 171 governing the issuance of drivers' licenses leads to the conclusion that the legislature gave the commissioner of highways the exclusive authority to issue and to suspend and revoke drivers' licenses. Section 171.16 states that district, municipal, and justice of the peace courts having jurisdiction over offenses committed under any law regulating the operation of motor vehicles shall forward within 10 days a record of the conviction or plea of guilty or forfeiture of bail of any person in the court for a violation of any such laws and *may recommend the suspension* of the driver's license of the person so convicted. The commissioner is authorized to suspend such license as recommended by such court without a hearing as provided in c. 171. Section 171.18 gives the commissioner the authority to suspend the license of any driver without preliminary hearing upon showing by department records or other sufficient evidence that the licensee has violated certain state laws. In Martinka v. Hoffmann, 214 Minn. 346, 9 N. W. (2d) 13, this court indicated under what circumstances the commissioner of highways may revoke the license of a driver without the necessity of a recommendation by the court before whom the conviction was obtained and the circumstances under which the court may recommend the suspension of the driver's license in case of traffic violations, except parking. There is a clear distinction between revocation and suspension of driver's license under the authority and the power which the legislature has placed in the commissioner's hands. It seems clear that it was the intention of the legislature to give to the courts the power to recommend suspension in certain cases of minor traffic violations where there are aggravated circumstances, but under § 171.17 it provides for revocation of the driver's license on the first conviction without recommendation from

the court where the conviction was obtained for a serious offense, such as driving an automobile while under the influence of intoxicating liquor as defined by the statute.[1]

■ Clearly, the municipal court was without authority to suspend any form of driver's license, restricted or not. The commissioner has been clothed with the authority to impose driver's license restrictions when he determines such action necessary and appropriate and, upon violation thereof, to suspend or revoke the license. The authority, however, granted to the commissioner in § 171.09 is subject to the provision that the licensee shall be entitled to a hearing.

■ As we view the license restrictions imposed, it is clearly limited to "Driving only to and from and as required by employment Monday thru Saturday." The commissioner did not in this case impose "such other restrictions applicable to the licensee as the commissioner may determine to be appropriate to assure the safe operation of a motor vehicle by the licensee." § 171.09. The commissioner in imposing the restrictions in the instant case was exercising powers delegated to him by legislative authority. We think it elementary that the restrictions thus imposed must be clear and positive by way of expression so that the licensee may understand what he can do and what he cannot do.

There is a well-known principle of statutory construction, which is coeval with municipal law, that purely statutory offenses cannot be established by implication, and that acts otherwise either innocent or lawful do not become crimes unless there is a clear and positive expression of the legislative intent to make them criminal. See, People v. Phyfe, 136 N. Y. 554, 32 N. E. 978, 19 L. R. A. 141.

■ We take it no one disputes the rule that a criminal statute must be definite as to persons within the scope of the statute and the acts which are penalized, and if the criminal statute is not definite, the due process clauses of Minn. Const. art. 1, § 7, and of U. S. Const. Amends. V and XIV, whichever may be applicable, are violated. The legislature, in the exercise of its power to declare what shall constitute a crime or punishable offense, must inform the citizen with reasonable precision

---

[1]Regarding construction of statutes, see Opinion Attorney General, No. 291-F, December 29, 1954; Opinion Attorney General, No. 291-F, October 11, 1949; Opinion Attorney General, No. 291-K, February 16, 1949.

of the acts it intends to prohibit so that he may have an understandable rule of conduct. If on its face a criminal statute is repugnant to the due process clause, specifications of details of the offense intended to be charged will not serve to validate it, it being the statute and not the accusation under it that prescribes the rule to govern conduct and warns against transgression. See, 1 Wharton, Criminal Law and Procedure, §§ 18, 19. In City of Minneapolis v. Olson, 76 Minn. 1, 78 N. W. 877, and State v. Larson, 83 Minn. 124, 86 N. W. 3, 54 L. R. A. 487, this court has held that an authority to impose penalties is to be strictly construed. Where a statute contains remedial and penal provisions, the former are to be construed liberally and the latter strictly. State v. Shevlin-Carpenter Co. 99 Minn. 158, 108 N. W. 935; 17 Dunnell, Dig. (3 ed.) § 8989.

Where failure of expression rather than ambiguity of expression concerning the elements of the statutory standard is the vice of the enactment, courts are not free to substitute amendment for construction and thereby supply the omissions of the legislature. If this be the rule as to construction of penal statutes, then most certainly restrictions imposed under § 171.09, where authority has been delegated to an administrative agency, ought to be stated in such explicit manner that all men subject to the penalties prescribed might know what acts it is their duty to avoid. It is required that the duty of the individual be set out with such explicit definition that the law-abiding may avoid prosecution and find protection, and if the wording either "requires" or "forbids" in terms so vague that men of common intelligence must guess at its meaning and differ as to its application, it is void for uncertainty. Reasonable certainty, however, has been held sufficient. See State v. Northwest Poultry & Egg Co. 203 Minn. 438, 281 N. W. 753, and cases cited, for a full discussion of the required standards. Also see, United States v. Lacher, 134 U. S. 624, 10 S. Ct. 625, 33 L. ed. 1080; State v. Hayes, 244 Minn. 296, 70 N. W. (2d) 110; State v. Evans, 154 Minn. 95, 191 N. W. 425, 27 A. L. R. 1165; State v. Kelly, 218 Minn. 247, 15 N. W. (2d) 554, 162 A. L. R. 477, with Annotation at 495; 50 Am. Jur., Statutes, §§ 472, 473.

There is nothing in the stipulated statement of facts stating why the driver in question was permitted only a restricted driver's license. We

can surmise that it must have been because of some traffic offense such as driving a motor vehicle while under the influence of intoxicating liquor. There is no charge, however, here that when he was picked up on the night in question he was under the influence of intoxicating liquor. Some point appears to have been made on the part of the prosecution that his car was facing south instead of north toward his home when he got in it to drive to his home. Section 171.09 provides that the commissioner may impose such additional restrictions as under the circumstances would assure safe operation of defendant's vehicle. Since no additional restriction was imposed, there is no authority for supplying what is missing by implication. If it appeared necessary in order to safeguard the public to report the matter to the commissioner, this procedure might have been taken and the recommendation made that additional appropriate restrictions be added.

■ Approval may not be given to a statutory provision authorizing the final revocation of a driver's license by loose and informal procedure for, if this were permitted, every automobile driver in the state would be at the mercy of the commissioner and his assistants without control in the legislative body from whom the delegated authority was received. See, Matter of Wignall v. Fletcher, 278 App. Div. 28, 103 N. Y. S. (2d) 7, affirmed, 303 N. Y. 435, 441, 103 N. E. (2d) 728, 731.

It has been said that the constitutional validity of a law is to be tested, not by what has been done under it, but what may, by its authority, be done and that not whatsoever has been done under a statute, but what may reasonably be done under it, is the test of its validity. Section 171.09 provides that the licensee shall have a right to be heard in case of suspension or revocation, and it will be assumed that to warrant revocation or suspension of a license good cause must always be shown by competent, legal testimony.

It is clear from the provisions of c. 171 that the commissioner would be acting arbitrarily if he suspended or revoked a license without a hearing where there are possible bona fide issues as to the right to revoke. We are not in the instant case concerned with the constitutionality of § 171.09, but with the question whether the defendant was deprived of his rights without due process of law by reason of the vagueness of the restriction imposed upon defendant's driver's license.

Much has been said as to whether a license to operate a motor vehicle is a right or a privilege. It has been variously denominated as a privilege in the nature of a right and as an important privilege or right under our present mode of living. No one will deny that we have reached a time in our modern way of life when the motor vehicle has clearly become a necessity to many people. The very livelihood of many, such as chauffeurs, truckers, traveling salesmen, men who work in skilled or unskilled labor, depends upon the operation of a motor vehicle. Their drivers' licenses are just as valuable as a license to engage in an occupation or profession. Clearly one's inalienable right to liberty and the pursuit of happiness is curtailed if he may be unreasonably kept off the highways maintained by him as a citizen and taxpayer. It was recently said in Wall v. King (1 Cir.) 206 F. (2d) 878, 882, that "the freedom to make use of one's own property, here a motor vehicle, as a means of getting about from place to place, whether in pursuit of business or pleasure, is a 'liberty' which under the Fourteenth Amendment cannot be denied or curtailed by a state without due process of law." In any event, the right of a citizen to drive a motor vehicle upon the highways is to be safeguarded against the whim or caprice of police or administrative officers. It is therefore clear that, whether a driver's license be termed a "privilege" or a "right," such license, whether restricted or not, once granted, is of substantial value to the holder thereof and it may not be suspended or revoked arbitrarily or capriciously but only in the manner and on the grounds provided by law.[2]

In the instant case defendant is charged with having committed a criminal offense, a misdemeanor, by violating the provisions of § 171.09. The rules applicable to trial under a penal statute of the state, both as applies to prosecution and defense, are those in Minn. Const. art. 1,

[2]For other decisions on the subject of suspension, cancellation, or revocation of drivers' licenses, outside of our own jurisdiction, see People v. Gillette, 172 Misc. 847, 16 N. Y. S. (2d) 361; Matter of Wignall v. Fletcher, 278 App. Div. 28, 103 N. Y. S. (2d) 7, affirmed, 303 N. Y. 435, 103 N. E. (2d) 728; Matter of Schutt v. MacDuff, 205 Misc. 43, 127 N. Y. S. (2d) 116; Carnegie v. Dept. of Public Safety (Fla.) 60 So. (2d) 728; South Carolina State Highway Dept. v. Harbin, 226 S. C. 585, 86 S. E. (2d) 466; Hughes v. Dept. of Public Safety (La. App.) 79 So. (2d) 129.

§ 6. The aforesaid constitutional provision guarantees to every citizen a speedy and public trial by an impartial jury and due process in all criminal cases whether defendant be innocent or guilty as charged. The record does not indicate whether defendant was informed of his rights in that respect, nor if he was, whether he waived his right to a jury trial.

■ Having determined that a license to operate an automobile, once acquired, is a right and privilege of real value and may not be suspended or revoked arbitrarily and taken away capriciously, we conclude (1) that the court below was without statutory authority to order a suspension of the defendant's driver's license, whether restricted or not and (2) that finding the defendant guilty was unwarranted under the record submitted. Therefore, defendant's conviction and sentence should not be allowed to stand.

Reversed and defendant discharged.