**UNDERWOOD GRAIN COMPANY, Respondent,**

v.

**Ramond J. HARTHUN, a/k/a Ramond Harthun, et al., Respondents,**

v.

**FARMER'S STATE BANK OF DENT, Appellant.**

No. C6–96–2429.

Court of Appeals of Minnesota.

June 3, 1997.

Robert W. Bigwood, Pemberton, Sorlie, Sefkow, Rufer & Kershner, P.L.L.P., Fergus Falls, for Respondent Underwood Grain.

Steven R. Peloquin, Peloquin & Minge, P.A., Perham, for Appellant Farmer's State Bank.

David Velde, Gaffaney & Velde Law Firm, Ltd., Alexandria, for Respondent Harthun.

Considered and decided by PARKER, P.J., TOUSSAINT, C.J., and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

Respondent, the holder of an agricultural production input lien on cattle, brought an action seeking to receive the proceeds of the sale of the cattle. Appellant, a lender who had a prior-in-time mortgage lien on the cattle and had responded to notification of the agricultural production input lien by refusing to commit any of the amount in the notification, intervened. The district court ordered that the funds be paid to the holder of the agricultural production input lien. Because Minn.Stat. §§ 514.952 and 336.9–312 provide that a prior-in-time mortgage lien is superior to an agricultural production input lien if the holder of the mortgage lien responds to notice by refusing to commit, we reverse.

## FACTS

As of July 15, 1993, appellant Farmer's State Bank of Dent (Bank) had a perfected security interest in cattle belonging to respondents Ramond and Judy Harthun. The cattle, along with other farm property, inventory, and government payments, secured the Harthuns' total indebtedness to Bank in excess of $150,000.

On February 27, 1996, Bank was notified that three days earlier respondent Underwood Grain Company (Underwood), supplier of feed to the Harthuns, had filed an agricultural production input lien on the cattle in

the amount of $9,835.25. Bank responded two days later, refusing to commit any of the amount in the notification. The cattle were sold, and the money was put in an escrow account.

Underwood and Bank each claimed to have a prior lien on the funds in escrow. The district court found that Underwood's lien had priority, and Bank appeals.

## ISSUE

Is the prior-in-time perfected Minn.Stat. § 336.9–312 lien of a lender superior to a perfected Minn.Stat. § 514.952 agricultural production input lien when the lender has responded to notification of the agricultural input lien by refusing to commit?

## ANALYSIS

[1] The construction of a statute is clearly a question of law and thus fully reviewable by an appellate court. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985). To answer the question presented in this case, we must examine two statutes and determine whether the relationship between them creates an ambiguous statutory scheme.[1]

Minn.Stat. § 336.9–312 (1994), a Uniform Commercial Code provision governing priority of liens, provides in relevant part:

(2) A perfected security interest in crops for new value given to enable the debtor to produce the crops during the production season and given not more than three months before the crops become growing crops by planting or otherwise takes priority over an earlier perfected security interest to the extent that such earlier interest secures obligations due more than six months before the crops become growing crops by planting or otherwise, even through the person giving new value had knowledge of the earlier security interest.

(3) A perfected purchase money security interest in inventory has priority over a conflicting security interest * * *.

(4) A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral or its proceeds if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within 20 days thereafter.

(5) In all cases not governed by other rules stated in this section (including cases of purchase money security interests which do not qualify for the special priorities set forth in subsections (3) and (4) of this section), priority between conflicting security interests in the same collateral shall be determined according to the following rules:

(a) Conflicting security interests rank according to priority in time of filing or perfection.

Section 336.9–312 does not mention agricultural production input liens. A separate statute, however, does address them.

Minn.Stat. § 514.952 (1994) provides in relevant part:

Subdivision. 1. ***Notification to lender.*** A supplier may notify a lender of an agricultural production input lien by providing a lien-notification statement to the lender * * *.

* * * * * *

Subd. 3. ***Response of lender to notification.*** (a) Within ten calendar days * * *, the lender must respond to the supplier with either:

(1) a letter of commitment for part or all of the amount in the lien-notification statement; or

(2) a written refusal to issue a letter of commitment.

* * * * * *

Subd. 4. * * * (b) If a lender responds with a refusal to provide a letter of commitment the rights of the lender and the supplier are not affected.

* * * * * *

---

1. The trial court, in determining priority in Underwood, ruled that "[b]ased upon the ambiguous statutory scheme involving secured transactions and agricultural input liens, the Court has relied upon its own judgment regarding the lien priority in this case. Underwood * * * must prevail if equity is to prevail."

Subd. 6. \* \* \* Agricultural production input liens are a security interest and have priority according to chapter 336, the uniform commercial code \* \* \*.

Here, Bank had a perfected security interest, Underwood notified Bank of the agricultural production input lien, and Bank responded with a refusal to commit. Therefore, the priority of their liens is to be determined according to chapter 336.[2]

■ Underwood argues that the omission of any mention of agricultural production input liens in Minn.Stat. § 336.9–312 is irrelevant because agricultural input liens are analogous to the interest in crops for new value given mentioned in subpart 2 of that statute and to the interest in collateral other than inventory mentioned in subpart 4. We cannot agree. The definitions in the agricultural production input statute distinguish between liens in crops and those in livestock.

Minn.Stat. § 514.950 provides:

Subd. 3. \* \* \* "Agricultural production input" means crop production inputs and livestock production inputs.

Subd. 4. \* \* \* "Crop production input" means agricultural chemicals, seeds, petroleum products, the custom application of agricultural chemicals and seeds, and labor used in preparing the land for planting, cultivating, growing, producing, harvesting, drying, and storing crops or crop products.

\* \* \* \* \* \*

Subd. 8. \* \* \* "Livestock production input" means feed and labor used in raising livestock.

Minn.Stat. § 336.9–312 is specifically restricted to crop production input. The time restrictions essential to the establishment of priority of crop production input liens in section 336.9–312 are inappropriate when applied to livestock. Given the clear statutory distinction between crop production input and livestock production input, Underwood's argument that a security interest in crops for

new value given to enable a debtor to produce crops during the production season also encompasses a security interest in cattle for feed provided must fail.

■ The argument that a lien on cattle for feed provided is the same as a purchase money lien on collateral other than inventory is equally unpersuasive. Moreover, subpart (5) of Minn.Stat. § 336.9–312 clearly restricts its application to only those purchase money security interests set forth in subparts (3) and (4). There is nothing to justify an expansive construction of this statute to include livestock production input liens.

■ When a statutory question involves failure of expression rather than ambiguity of expression, courts are not free to substitute amendment for construction and thereby supply the legislative omissions. *State v. Moseng*, 254 Minn. 263, 269, 95 N.W.2d 6, 11–12 (Minn.1959). This court is prohibited from adding words to a statute and cannot supply what the legislature either purposely omitted or inadvertently overlooked. *Ullom v. Independent Sch. Dist. No. 112*, 515 N.W.2d 615, 617 (Minn.App.1994). In following the appropriate mandate of statutory construction, we can discern no ambiguity in the statutory scheme set forth in sections 336.9–312 and 514.952. Section 336.9–312 addresses the security interest in crops for new value; it addresses no other specific liens. It is a principle of statutory construction that the expression of one thing means the exclusion of others ("expressio unius est exclusio alterius"). *See* Minn.Stat. § 645.19 (1966); *e.g., Cairl v. City of St. Paul*, 268 N.W.2d 908, 912–13 (Minn.1978) (holding that because a statute explicitly provided a negligence standard, it implicitly excluded a strict liability standard).[3] Therefore, a provision for agricultural production input liens cannot be read into section 336.9–312.

■ Instead, we must apply the statute that does directly address agricultural production input liens. Section 514.952, applied

---

**2.** Minn.Stat. § 514.952, subd. 5, provides that if a lender does not respond to notification, a perfected agricultural production input lien has priority over the lender's security interest. Because Bank did respond, this subdivision is irrelevant here.

**3.** Because we hold that Bank's lien has priority over Underwood's, we do not address the marshaling of assets issue.

to the facts of this case, provides that if upon notification by Underwood to Bank of an agricultural input lien, Bank, within ten days, refuses in writing to issue a letter of commitment, the rights of Underwood and Bank are not affected. Here Bank did respond in a timely manner and its lien retains priority.

## DECISION

Minn.Stat. §§ 514.952 and 336.9–312 unambiguously indicate that Bank's lien has priority over Underwood's. We reverse the district court's determination that Underwood is entitled to the proceeds of the sale of the cattle.

**Reversed.**