**TRACY STATE BANK, Respondent,**

v.

**TRACY–GARVIN COOPERATIVE,
Appellant.**

No. C2–97–1580.

Court of Appeals of Minnesota.

Jan. 20, 1998.

Brian J. Murphy, Quarnstrom, Doering, Pederson, Leary & Murphy, P.A., Marshall, for respondent.

C. Thomas Wilson, Gislason, Dosland, Hunter & Malecki, P.L.L.P., New Ulm, for appellant.

Considered and decided by PETERSON, P.J., and KALITOWSKI and HOLTAN, JJ.

## OPINION

HARVEY A. HOLTAN, Judge.*

Appellant, the holder of an agricultural production input lien, challenges the trial court's calculation of its lien amount, arguing the amount stated in the lien notification statement, issued pursuant to Minn.Stat. § 514.952, subd. 1 (1996), evidenced a revolving credit limit. We affirm.

## FACTS

Karl Campbell operated a "farrow to finish" hog farm. From December 1994 through March 1996, Tracy State Bank (respondent) loaned Campbell approximately $295,000 in loans, which were evidenced by promissory notes. Respondent perfected its interests by filing a financing statement on August 12, 1991, and a continuation of the financing statement on December 12, 1994.

On October 10, 1995, Tracy Garvin–Cooperative (appellant) filed an agricultural production input lien statement that listed Campbell (debtor) as the debtor and appellant as the secured party. In addition, the agricultural production input lien statement listed a lien amount of $65,000 and identified transaction dates covered by the lien as July 15, 1995 to November 15, 1995. Respondent received notification of the lien and did not issue a response to the lien notification statement.

From July 15, 1995, to and including November 15, 1995 (the dates listed on the agricultural production input lien statement), appellant provided debtor with $73,748.13 of feed. Debtor made payments to appellant toward the debt evidenced in the statement, totaling $44,682.25. When debtor voluntarily liquidated his entire inventory, he was indebted to respondent for unpaid principal and interest in excess of $150,000, and the proceeds from the liquidation, $54,037.90, were placed in a supervised account in re-

spondent's name. Appellant and respondent each claimed an interest in the funds. The parties stipulated to the facts and tried their dispute to the court. The trial court found that appellant's lien had priority up to the amount listed in the agricultural production input lien statement, $65,000, and adjusted the listed amount to reflect the amount debtor previously paid to appellant on that debt.

## ISSUE

Did the trial court err in its calculation of the agricultural input lien?

## ANALYSIS

Statutory construction is a question of law, which this court reviews de novo. *Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188, 190 (Minn.1990); *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985). As a fundamental rule of statutory interpretation, this court "should look first to the specific statutory language and be guided by its natural and most obvious meaning." *Heaslip v. Freeman*, 511 N.W.2d 21, 22 (Minn.App. 1994), *review denied* (Minn. Feb. 24, 1994). The application of the law to stipulated facts is a question of law, which this court reviews de novo. *Morton Bldgs., Inc. v. Commissioner of Revenue*, 488 N.W.2d 254, 257 (Minn.1992).

Minnesota law affords a special priority for liens acquired by suppliers of feed or labor used in raising crops or livestock. *See* Minn. Stat. §§ 514.950–.959 (1996) (providing state priority rules for agricultural production input liens); *see also* Steven C. Turner, et al., *Agricultural Liens and The U.C.C.: A Report on Present Status and Proposals for Change*, 44 Okla. L.Rev. 9, 65 (1991) (listing special priority provisions applied to agricultural production input liens in Minnesota). To establish this priority, the prior secured party must receive notification of the agricultural input lien. *See* Minn.Stat. § 514.952 (outlining requirements of notification and lien notification statement). If the secured

---

* Retired judge of the district court, serving as judge of the Minnesota Court of appeals by ap-

pointment pursuant to Minn. Const. art. VI, § 10.

creditor responds to the notification, then the statute does not afford the supplier priority over the prior secured creditor. *See* Minn. Stat. § 514.952, subd. 4; *Underwood Grain Co. v. Harthun,* 563 N.W.2d 278, 282 (Minn. App.1997) (holding prior secured party retains priority over agricultural input lien holder where secured party responds to notification within statutory period). However, if the prior secured party fails to respond to the lien notification statement, the supplier can claim priority, within certain limitations, over the prior secured creditor. *See* Minn. Stat. § 514.952, subd. 5 (providing priority for lienholder where prior secured party fails to respond, and addressing limitations placed on that priority); *Harthun,* 563 N.W.2d at 281 n. 2 (concluding where lender does not respond to notification, perfected agricultural production input lien has priority over prior secured party).

■ In this case, the parties agree that respondent failed to respond to the lien notification statement, and therefore, appellant should be given a priority interest in the funds held in the supervised account. However, the parties disagree on the amount of appellant's priority claim. Appellant argues the statute permits the establishment of a "revolving" agricultural input lien, and the lien notification statement did not evidence a static amount, but rather, evidenced a revolving credit amount that could be "paid down" by the debtor and then "re-borrowed" by the debtor up to the listed amount. Thus, appellant argues despite the fact that its debtor made numerous payments on the debt, it is entitled to priority for the entire amount listed on the lien notification statement because it continued, subsequent to the lien notification statement, to provide debtor with supplies.

Under Minnesota law,

[i]f a lender does not respond * * * to the supplier within ten calendar days after receiving the lien-notification statement, a perfected agricultural production input lien corresponding to the lien-notification statement has priority over any security interest of the lender in the same crops or livestock or their proceeds for *the lesser of:*

(1) the amount stated in the lien-notification statement;

(2) the unpaid retail cost of the agricultural production input identified in the lien-notification statement; *or*

(3) for livestock any limitation in section 514.954, subdivision 2.

Minn.Stat. § 514.952, subd. 5 (emphasis added). The lien notification statement provided to the prior secured lender, in addition to other information, discloses

a description and the date or anticipated date or dates of the transaction and the *retail cost or anticipated costs of the agricultural production input.*

Minn.Stat. § 514.952, subd. 2(3) (emphasis added). Such a statement provides important information to the prior secured creditor to use in deciding whether or not to issue a response to the lien notification statement. *See id.,* subd. 2 (enumerating information to be supplied in lien notification statement).

■ Appellant asks this court to interpret these statutory sections as allowing an agricultural production input lienholder to establish a "revolving" account that has priority over a prior secured creditor. However, when a statutory question involves the failure of expression rather than the ambiguity of expression, this court is not free to substitute amendment for construction and thereby supply the omissions of the legislature. *State v. Moseng,* 254 Minn. 263, 269, 95 N.W.2d 6, 11–12 (1959); *see also* Minn. Stat. 645.16 (1996) (stating where words of law are clear and free from ambiguity, court shall not disregard letter of law under pretext of pursuing spirit); *Tuma v. Commissioner of Econ. Sec.,* 386 N.W.2d 702, 706 (Minn.1986) (holding where language of statute is unambiguous, court must give effect to statute's plain meaning). Moreover, this court is prohibited from adding words to a statute and cannot supply what the legislature either purposely omitted or inadvertently overlooked. *Ullom v. Independent Sch. Dist. No. 112,* 515 N.W.2d 615, 617 (Minn. App.1994); *see also Phelps v. Commonwealth Land Title Ins.,* 537 N.W.2d 271, 274 (Minn. 1995) (holding where intention of legislature clearly manifested by plain unambiguous language, no construction necessary or permit-

ted). Because we discern no ambiguity in Minn.Stat. § 514.952, we decline to read the "retail cost or anticipated costs of the agricultural production input" to encompass a "revolving debt" arrangement. Furthermore, under these circumstances, the cooperative could have adequately protected itself by filing a supplemental lien notification statement. *See* John D. Copeland, *The Status of an Agricultural Cooperative When a Farmer Member Experiences Financial Distress*, 23 U.C. Davis L.Rev. 551, 552–54 (1990) (noting protection of cooperative's financial integrity begins with clearly established credit policy which sets reasonable credit limits for all members and provides for credit review and adequate collateralization of debt). In addition to providing necessary protection to the cooperative, such a filing would have provided adequate notice to the Bank of the nature of the Cooperative's relationship with its debtor.

## DECISION

Minn.Stat. § 514.952 unambiguously indicates that the lien notification statement does not evidence a revolving debt. We affirm the district court's determination that appellant is entitled to priority in the funds to the extent of the amount stated in its lien notification statement reduced by the amounts paid by the debtor on appellant's lien.

**Affirmed.**