*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0736**

Jeffery R. Schultz,
Respondent,

vs.

Scott A. Mende, et al.,
defendants and third party plaintiffs,
Respondents,

vs.

City of Madison Lake,
third party defendant,
Appellant.

**Filed December 8, 2014
Affirmed
Reilly, Judge**

Blue Earth County District Court
File No. 07-CV-11-4056

Karl O. Friedrichs, Friedrichs Law Office, P.A., Mankato, Minnesota (for respondent Jeffrey R. Schultz)

Keith L. Deike, Perry A. Berg, Patton, Hoversten & Berg, P.A., Waseca, Minnesota (for respondents Scott A. Mende, et al.)

George C. Hoff, Shelley M. Ryan, Hoff, Barry & Kozar, P.A., Eden Prairie, Minnesota (for appellant)

        Considered and decided by Peterson, Presiding Judge; Rodenberg, Judge; and

Reilly, Judge.

UNPUBLISHED OPINION

**REILLY**, Judge

Appellant-city challenges the district court's grant of summary judgment in favor of respondent-landowners, determining that the city's zoning ordinance did not prohibit the use of a recreational vehicle on the landowner's property. Because we conclude that the district court did not err in its interpretation of the city's ordinance regarding respondents' use of the property, we affirm.

## FACTS

In July 2007, respondents Scott and Patricia Mende (the Mendes) applied for a Conditional Use Permit (CUP) to construct a boat house "to secure [the] boat [and] fishing supplies" on their property located at 791 Main Street, Madison Lake, Minnesota (property). The city council for appellant City of Madison Lake (city) approved the application and issued a CUP allowing for the construction of a boat house "with the condition that at the time of sale conditional use will be reviewed." The permit also required the Mendes to "comply in all respects with the ordinances of the City of Madison Lake."

In April 2008, the city discovered that the Mendes were advertising the property for sale. The city sent the Mendes a letter clarifying that the property was uninhabitable and could only be used as explicitly provided for in the CUP. The letter continued:

> Under our accessory use section of the ordinance, the building shall not contain a water supply or sewage treatment facilities and is limited solely for watercraft storage, including storage for related boating and water orientated sporting equipment. Chapter 5, Subd. 4(b)(1)(D) provides that

2

boathouses cannot be used as a dwelling and do not contain sanitary facilities.

In spring 2008, respondent Jeffery R. Schultz (Schultz) purchased the property from the Mendes under the belief that he could park a recreational vehicle (RV) or camper on the property to sleep in while using the boat house. The city informed Schultz that "[s]ince the conditional use was granted solely for a boat house and not for any type of residential use, parking a recreational vehicle on this property is a violation of the conditional use permit and an illegal use." In February 2009, the city reiterated its position that using an RV on the property is "inconsistent with the conditional use permit" and "must be denied." In August 2009, Schultz sought to amend the CUP to allow for the use of an RV on the property. The city denied the application.

Schultz thereafter initiated a tort action against the Mendes, alleging that they misrepresented the use of the property by suggesting that he could park an RV on the property to sleep in overnight and install bathroom facilities in the boat house. Schultz alleged that the Mendes did not notify him of the ordinances or the CUP at the time of sale. The Mendes filed a third-party complaint against the city, asserting that the city's position on the use of Schultz's lot was unconstitutional and unenforceable and seeking a declaratory ruling that it was permissible to use an RV on the property. The district court granted the Mendes's motion for dispositive relief and concluded that Schultz's recreational use of the RV is "clearly accessory and incidental to the primary purpose of the property, which is recreation." The district court determined that the city's zoning

3

ordinance did not preclude the use of an RV on the property and that the Mendes were entitled to judgment as a matter of law. The city appeals.

**D E C I S I O N**

Summary judgment is appropriate where there are no genuine issues of material fact and a party is entitled to a judgment as a matter of law. Minn. R. Civ. P. 56.03. On appeal from a grant of summary judgment, questions of law are reviewed de novo, *City of Elko v. Abed*, 677 N.W.2d 455, 460 (Minn. App. 2004), *review denied* (Minn. June 29, 2004), and the evidence is viewed in the light most favorable to the party against whom summary judgment was granted, *State Farm Fire & Cas. v. Aquila Inc.*, 718 N.W.2d 879, 883 (Minn. 2006). Here, there are no genuine issues of material fact and the issue presented to this court is solely a legal question regarding the interpretation of the city's ordinance regulating land use. The application of local ordinances to undisputed facts is a legal conclusion which we review de novo. *City of Morris v. Sax Invs., Inc.*, 749 N.W.2d 1, 5 (Minn. 2008).

The city appeals the district court's order granting summary judgment in favor of the Mendes, arguing that the district court erred by engaging in judicial construction and ignoring the plain language of the relevant zoning ordinance. We apply the rules of statutory construction to municipal ordinances and resolutions. *Eagan Econ. Dev. Auth. v. U-Haul Co. of Minn.*, 787 N.W.2d 523, 535 (Minn. 2010). Statutory interpretation is a question of law subject to de novo review. *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 836 (Minn. 2012).

4

The object of statutory interpretation is to ascertain and effectuate the intention of the legislative body. Minn. Stat. § 645.16 (2012). The "touchstone" for statutory interpretation is the plain meaning of the language itself. *ILHC of Eagan, LLC v. Cnty. of Dakota*, 693 N.W.2d 412, 419 (Minn. 2005). Words and phrases are construed according to their common and approved usage. Minn. Stat. § 645.08(1) (2012). However, where a word or phrase has acquired a special meaning or is otherwise statutorily defined, we will construe that word "according to such special meaning or [its] definition." *Id*. The principles of construction for interpreting and applying a zoning ordinance are as follows:

> First, courts generally strive to construe a term according to its plain and ordinary meaning.
>
> Second, zoning ordinances should be construed strictly against the city and in favor of the property owner.
>
> [Third,] A zoning ordinance must always be considered in light of its underlying policy.

*SLS P'ship v. City of Apple Valley*, 511 N.W.2d 738, 741 (Minn. 1994) (alteration in original) (quoting *Frank's Nursery Sales, Inc. v. City of Roseville*, 295 N.W.2d 604, 608-09 (Minn. 1980)).

The city enacted Zoning Ordinance #216 to establish regulations governing the development and use of structures and land within the city. Chapter 2 sets forth the definition of words and terms used within the ordinance. A "building" is defined as "[a]ny structure used or intended for supporting or sheltering any use or occupancy." In turn, a "structure" is defined as anything which is "built, constructed or erected." "Use" is defined as:

The purpose or activity for which the land or building thereon is designated, arranged or intended or for which it is occupied, utilized or maintained and shall include the performance of such activity as defined by the performance standards of this Ordinance.

Chapter 5, subdivision 6 of the ordinance delineates certain performance standards, including minimum lot sizes and widths, setbacks, maximum building heights, and additional requirements. The property is located in an R-1 residential district, which provides for "low-density, single family residences and directly related complimentary uses." Pursuant to the performance standards, however, the property does not meet the minimum lot size and width requirements to support a single-family residence.

The city argues that Schultz impermissibly used the RV as a temporary dwelling unit in violation of the ordinance's General District Provisions. The underlying purpose of the General District Provisions is to "establish general development standards to assure compatible land uses to prevent blight and deterioration and to enhance the health, safety and general welfare of the City." The General District Provisions prohibit an individual from dwelling or residing in an "accessory building." An "accessory building" is defined as "[a] use incidental to and on the same lot as a principal use."

The city characterizes the RV as both an "accessory building" and a "structure," and argues that Schultz is precluded from using it as an overnight dwelling. The district court rejected the city's argument, finding that the ordinance's definition of "accessory building" was ambiguous and concluding that an accessory building is limited to "brick-and-mortar, immovable, permanent structure[s] built on the property." Accordingly, the

6

district court concluded that an RV is not an accessory building within the meaning of the ordinance.

On appeal, the city argues that the district court erred by disregarding the plain language of the ordinance and substituting its own definition. When interpreting an ordinance, we look first to whether the language, on its face, is clear or ambiguous. *Motokazie! Inc. v. Rice Cnty.*, 824 N.W.2d 341, 344 (Minn. App. 2012). If the language of the ordinance is clear and unambiguous, statutory construction is "neither necessary nor permitted" and the court must apply the ordinance's plain meaning. *Am. Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn. 2001). In matters of statutory construction, a statute is only ambiguous when the language is subject to more than one reasonable interpretation. *Motokazie! Inc.*, 824 N.W.2d at 344. If the text of the law is ambiguous, a court may look to the canons of statutory construction to determine its meaning. *Cnty. of Dakota v. Cameron*, 839 N.W.2d 700, 705 (Minn. 2013).

The district court determined that an "accessory building" is defined "somewhat ambiguously" as a "use incidental and on the same lot as a principal use." The district court stated that the city's definition provided "little guidance as to what a building actually is under the zoning code." Likewise, the district court determined that the definition of the word "building" was "somewhat ambiguous." The district court reasoned that if an RV qualified as a "building," as the city contends, then:

> [I]t would seem that any object with structure that is being used or intended for any use or occupancy (e.g.: a picnic table, a grill, a tent, a car, etc.) would be considered a structure, in which case any item intended for either use or occupancy would constitute a building. But this cannot be the

7

> meaning of [the definition of the word "building"]. It would be inconsistent with the plain meaning of the word "building", and make no sense.

We agree with the district court's analysis. When reviewing an ordinance, "[i]t is the duty of courts to construe statutes and ordinances to avoid absurd restrictions or results." *Smith v. Barry*, 219 Minn. 182, 187, 17 N.W.2d 324, 327 (1944); *see also In re Khan*, 804 N.W.2d 132, 141 (Minn. App. 2011). The city's zoning ordinance defines a "structure" as "[a]nything which is built, constructed or erected," including "[a]n edifice or building of any kind or any piece of work artificially built up and/or composed of parts joined together in some definite manner whether temporary or permanent in character." To cast the definition of "structure" as widely as the city suggests would seem to incorporate items like picnic tables, tents, cars, or umbrellas, and would clearly produce an absurd result. *See* Minn. Stat. § 645.17 (2012) (providing that a court, in ascertaining the intent of a lawmaking body, may presume that it "does not intend a result that is absurd, impossible of execution, or unreasonable.").

Moreover, the definition section of the zoning ordinance separately defines a "recreational vehicle" as "[a] vehicular portable structure used for amusement, vacation or recreational activities," and includes travel trailers, boat and utility trailers, motor homes, and camping trailers. The canons of statutory construction provide that "[e]very law shall be construed, if possible, to give effect to all its provisions." *Amaral v. St. Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn. 1999) (quoting Minn. Stat. § 645.16). Thus, no phrase or sentence should be deemed "superfluous, void, or insignificant." *Id.* Injecting "recreational vehicle" into the definition of "structure," without regard for the

8

definition of "recreational vehicle" contained elsewhere in the chapter, would render the latter superfluous and void.

The parties disagree over the principal use of the property. The ordinance defines "principal use" as "[t]he main use of land or buildings as distinguished from subordinate or accessory uses." The city claims that the principal use of the property is the boat house itself. Respondents argue that the principal use of the property is recreational. The district court agreed with respondents' interpretation and determined that the ordinary use of the lakeshore property consisted of "recreational activities such as boating, fishing, picnicking [and] camping." The district court reasoned that the ordinance could not be construed so narrowly as to prohibit recreational use of the property "simply by virtue of the fact that a boat house has been built thereon." We find no error in the district court's determination that the principal use of the property is recreational.

Next, we turn to the question of accessory uses of the property. An "accessory use" is "[a] use incidental to and on the same lot as a principal use." Chapter 5, subdivision 3 is entitled "Accessory Uses" and enumerates the permitted accessory uses in the R-1 residential district, which are in addition to the General District Provisions. Chapter 5 provides an extensive list of permitted accessory uses in the R-1 residential district, including private garages, parking spaces and carports, RVs, home occupations, swimming pools, tennis courts and other recreational facilities, the keeping of animals, ice-fishing facilities, piers, docks and related storage, fences, lodging rooms, tool houses, sheds and similar noncommercial storage buildings, water-oriented accessory structures,

and "[u]ses determined by Planning Commission to be similar to those listed in this Subdivision."

Under a plain reading of this subdivision, boat houses and RVs are both expressly recognized as permitted accessory uses in the R-1 residential zoning district. Subdivision 3 allows for RV-use so long as the RV displays "current licenses" and is in "operable condition." Boat houses are also permissible, provided they are not "designed or used for human habitation" and do not "contain water supply or sewage treatment facilities." Similarly, the subdivision provides for storage facilities "used solely for the purpose of ice-fishing" provided said facilities "display current licenses and are not used as independent living/sleeping quarters."

Giving effect to the plain language of the zoning ordinance, it is clear that an RV is a permitted accessory use of the property. Under the ordinance, an accessory use must be "incidental to" the principal use. The ordinance does not define "incidental use," but "incidental" is commonly recognized to mean "[s]ubordinate to something of greater importance." *Black's Law Dictionary* 830 (9th ed. 2009). The city argues that Schultz's use of the RV must be incidental and subordinate to the principal use of the boat house as a storage facility for the boat and equipment. By way of example, the city argues that it would be appropriate to use the RV for storage provided it was not used to provide sleeping or sanitation facilities. The city's interpretation is strained. As listed above, subdivision 3 specifically lists ice-fishing facilities as a permitted accessory use, "provid[ed] said facilities . . . are not used as independent living/sleeping quarters." If the city had intended to limit RV use to passive storage and not for use as independent

10

living/sleeping quarters, it could have included language to that effect within the definition contained in subdivision 3. The fact that it chose not to do so reinforces our determination that RV use is not strictly limited to storage. *See Underwood Grain Co. v. Harthun*, 563 N.W.2d 278, 281 (Minn. App. 1997) ("It is a principle of statutory construction that the expression of one thing means the exclusion of others . . . ."). Because the zoning ordinance is ambiguous and the city's interpretation leads to an absurd result, we affirm the district court's grant of summary judgment in favor of the Mendes and against the city.

     **Affirmed.**